# Richmond

JOHN H. SLOAN v. COMMONWEALTH OF VIRGINIA.

March 10, 1958.

Record No. 4773.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*S. W. Coleman, Jr.*, and *Coleman & Coleman*, for the plaintiff in error.

*Kenneth C. Patty, Attorney General* and *Thomas M. Miller, Assistant Attorney General*, for the Commonwealth.

(Case submitted on briefs)

BUCHANAN, J., delivered the opinion of the court.

■ John H. Sloan, the appellant, was indicted jointly with Jim Bellamy on two counts, the first count charging them with forging a check and the second count with uttering it knowing that it was forged. Code, § 18-26. Sloan was tried separately by a jury which returned a verdict finding him guilty "of lending Countenance or otherwise aiding and encouraging and inciting the principal in passing a forged check at the Farmer's Supply Co. for the sum of $14.63 as charged in the second Count of the within Indictment and fix his punishment by confinement in the penitentiary at two (2) years." He was sentenced accordingly and we granted him a writ of error.

The defendant has assigned a number of errors involving the admission of evidence, rulings on his motions to strike the Commonwealth's evidence, and the giving and refusing of instructions, but his main contention is that the Commonwealth's evidence showed that the defendant himself uttered or passed the check and that the court should not have instructed the jury as to principals in the first degree and principals in the second degree, and that the jury's verdict finding him guilty of aiding in passing the check was without any supporting evidence.

The evidence for the Commonwealth was to the effect that in May 1956 Sloan came to the Farmers Supply Company in Gate City, bought a bag of fertilizer from one of the clerks and presented to Hammond, one of the partners, a check for $14.63 dated May 9, 1956, purporting to be signed by T. J. Freeman, payable to the order of Jim F. Bellamy and endorsed in that name. Hammond did not know Sloan or Bellamy. He asked Sloan if his name was Jim Bellamy and he said it was. The check bore a notation that it was for labor, and Hammond asked Sloan if he had been working for Freeman and Sloan said he had. Hammond knew Freeman and knew if Freeman gave the check it was good. Hammond accepted the check in payment for the fertilizer and gave Sloan the difference in money.

The check was a forgery. Sloan had never worked for Freeman, but Bellamy had been working for him just before the check was passed. Bellamy was Freeman's grandson, had forged several checks on his grandfather and had been sent to the penitentiary for doing so.

Prior to the trial Hammond had had some difficulty in identifying Sloan as the man who gave him the check but was positive about it

at the trial, and two other witnesses testified that it was Sloan who was in the store and made the purchase on the occasion in question.

Sloan and Bellamy were frequent companions and there was a strong inference from the evidence that this was one of a series of similar instances in which they had cooperated in passing forged checks. The night before this incident they were together at a service station and tried to cash a check purporting to be signed by T. J. Freeman. On that occasion Sloan did the talking and stated that he and Bellamy worked for Freeman. The afternoon before this transaction at Farmers Supply Company, Sloan and Bellamy were together at a store at Weber City, a mile or so away, and there paid for some purchases by a check drawn on T. J. Freeman payable to Bellamy, which Bellamy then endorsed and which proved to be a forgery.

The defendant did not testify but offered the evidence of a taxicab driver, who testified that about garden time in May 1956, in the early morning Bellamy employed him to take him (Bellamy), Sloan and a boy, whose name he did not know, to a store in Weber City (being the store at which the Commonwealth's witness had testified that Bellamy and Sloan had passed a forged check); that Sloan and Bellamy went into the store but the boy stayed in the car; that he then brought them back to Gate City; that later that morning, about nine o'clock, Bellamy again hired him to take the same three passengers to a farm on Clinch River several miles distant; that on the way Bellamy said he wanted to stop at the Farmers Supply Company, so he drove them there and backed his car up to the store platform; that Bellamy got out, went into the store, got a bag of fertilizer and some tomato plants; that the bag of fertilizer was rolled out onto the platform by Hammond, placed in the back end of the car by Bellamy and the boy, and he then drove all of them on down to a house on Clinch River, he did not know whose, and there Bellamy and the boy unloaded the fertilizer and tomato plants and he turned around and brought them all back to Gate City. He testified that Sloan never got out of the car at Farmers Supply and that Bellamy paid him fifty cents for the trip to Weber City and three dollars for the trip down to the farm.

On May 21, 1956, Ralph Barker, partner in the Farmers Supply Company, had a warrant issued against Jim Bellamy for forging and uttering the $14.63 check on May 9, 1956.

Sloan contends that according to the Commonwealth's evidence he was a principal in the first degree, the one who uttered the check;

that the Commonwealth offered no evidence that some person other than he committed the crime of uttering the check, and hence there could be no basis for the giving of an instruction as to principals in the first and second degree, or for the verdict finding the defendant guilty of aiding and abetting. This argument overlooks the fact that the jury was not bound to accept either account of the transaction *in toto*, but could have accepted some of the testimony of the witnesses on both sides and discarded some. *Callahan* v. *Commonwealth*, 192 Va. 26, 30, 63 S. E. 2d 617, 619; *Hodge* v. *Winchester*, 153 Va. 904, 150 S. E. 392.

The evidence for the Commonwealth, it is true, was that Sloan uttered the check; but the evidence for the defendant was that Bellamy uttered the check, or at least was the man who went into the store and bought the fertilizer while Sloan waited in the car at the platform at the front of the store. There was evidence sufficient to warrant a conclusion by the jury that Sloan and Bellamy were operating together in a joint enterprise of forging checks and getting them cashed. There was ample evidence to have warranted a finding by the jury that Sloan uttered the check and was the principal actor in that offense; but the jury could have concluded that some doubt existed as to the identity of the immediate actor because of Hammond's temporary uncertainty and the issuance of the warrant against Bellamy, and that in view of the testimony, vouched for by the defendant, that Bellamy was the one who cashed the check while Sloan waited outside and drove away with him in the vehicle which carried off the unlawfully obtained property, Sloan's participation in the crime was as an aider and abettor of Bellamy. Moreover, the jury could have believed from the evidence that while Sloan actually went into the store and cashed the check, he did so to aid Bellamy, who was waiting just outside the door, in accomplishing Bellamy's purpose, shared by Sloan, to get money and goods on checks that Bellamy had forged.

On the evidence as a whole it was proper for the court to give to the jury the instruction to which the defendant assigns error, which accurately stated in language approved in *Horton* v. *Commonwealth*, 99 Va. 848, 863, 38 S. E. 184, 185, that principals in the first degree in every felony are those who are the immediate perpetrators of the crime; and that principals in the second degree are those who did not with their own hands commit the act, but were present, aiding and abetting it, and that principals in the second degree are liable to the

same punishment as principals in the first degree. Section 18-3 of the Code provides that every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree.

" 'Every person who is present at the commission of a trespass, encouraging or inciting the same by words, gestures, looks or signs, or who in any way, or by any means, countenances or approves the same, is, in law, assumed to be an aider and abettor, and is liable as principal.' " *Brown* v. *Commonwealth*, 130 Va. 733, 736, 107 S. E. 809, 810. See also *Stapleton* v. *Commonwealth*, 140 Va. 475, 487, 124 S. E. 237, 241; *Spradlin* v. *Commonwealth*, 195 Va. 523, 79 S. E. 2d 443.

The defendant, in apparent recognition of these different aspects of the case, requested and was granted an instruction telling the jury that before they could convict the defendant on the second count of the indictment, the evidence must show beyond a reasonable doubt that the defendant himself uttered the forged writing, or was present at the time such forged writing was uttered by some other person, aiding and assisting such other person in uttering the check with knowledge at the time that it was forged.

The defendant assigns error to the admission of the testimony as to the incident at the filling station the night before the occurrence at the Farmers Supply Company, and as to the incident at Weber City the afternoon before, as referred to above. The objection to this testimony did not state the grounds on which it was made as required by Rule 1:8 (see *Harlow* v. *Commonwealth*, 195 Va. 269, 77 S. E. 2d 851), but in any event the evidence was clearly admissible as relating to similar transactions closely connected in time with the one under investigation and tending to show a general scheme or guilty knowledge and intent. *Boyd* v. *Commonwealth*, 156 Va. 934, 944, 157 S. E. 546, 549-50; *Barber* v. *Commonwealth*, 182 Va. 858, 867, 30 S. E. 2d 565, 569; *Roy* v. *Commonwealth*, 191 Va. 722, 62 S. E. 2d 902; *People* v. *Marino*, 271 N. Y. 317, 3 N. E. 2d 439, 105 A. L. R. 1283 and Anno. at 1288; *Nye & Nissen* v. *United States*, 336 U. S. 613, 93 L. ed. 919, 69 S. Ct. 766.

While the defendant assigned error to the refusal of his Instruction D-4, he stated no grounds for objecting to its refusal; and Instruction D-5, which was given, stated more accurately the principle attempted to be stated in D-4. The jury were correctly and adequately in-

structed, there was sufficient evidence to support their verdict, no error prejudicial to the defendant appears and the judgment of conviction is therefore

*Affirmed.*