## Norfolk

WAYNE JOHN HENRY

v.

COMMONWEALTH OF VIRGINIA

No. 0081-85

Decided April 15, 1986

COUNSEL

Albert Teich, Jr., for appellant.

Marla Lynn Graff, Assistant Attorney General (Gerald L. Baliles, Attorney General of Virginia, on brief), for appellee.

OPINION

**DUFF, J.**—After trial by jury, Wayne John Henry was found guilty of conspiring to deliver marijuana to a prisoner and conspiring to deliver a firearm to a prisoner. His punishment for the offenses was fixed at a $200 fine and five years in the penitentiary, respectively. The questions presented in this appeal are whether venue was proper in the Circuit Court for the City of Norfolk and whether the evidence was sufficient to find beyond a reasonable doubt that the defendant was a criminal agent in the conspiracies.

The evidence shows that Deborah Moore received a letter in the City of Norfolk from her husband, Richard Moore, who was an inmate at a correctional facility in Chesapeake, Virginia. The letter indicated that Moore wanted a gun and marijuana brought to him at the correctional facility. It also implicated Henry as a party to the conspiracy, in a reference to him by his nickname, "Shadow." Mrs. Moore took the letter to the Norfolk police.

In cooperation with, and at the request of the police, Mrs. Moore went to visit her husband at the correctional facility where she met with him and Henry. Henry told her that he wanted a gun and marijuana because they were planning to break out and needed money. At a second meeting between Mrs. Moore, her husband, and Henry, she was told to give the gun and marijuana to Bill Glass, a guard at the facility, and that he would deliver

them inside to the men.

Mrs. Moore received phone calls in Norfolk from Glass arranging a time and place to give him the gun and marijuana. The first scheduled meeting never occurred. However, they spoke again on the phone and arranged a second meeting at the Junior Market in the City of Norfolk, where Mrs. Moore was to give Glass the gun and marijuana. Because of the short notice of the meeting, the police were unable to provide the marijuana. At this meeting, Mrs. Moore gave Glass the gun and advised him that other arrangements would be necessary with regard to the marijuana.

The police who observed the transaction between Moore and Glass arrested Glass several blocks from the scene. At the police station, Glass was interrogated by Officer Kramer. Kramer testified on cross-examination by appellant's counsel that Glass told him "Shadow" had sent him to get the gun from Mrs. Moore. Henry was known to Glass by his nickname "Shadow."

As a result of the information received from Glass, the police questioned Moore and Henry at the correctional facility in Chesapeake. Henry admitted that he had asked Glass on many occasions to get drugs and alcohol for him and he had, in fact, sent him to meet with Mrs. Moore at the Junior Market in Norfolk, but only to get marijuana, not a gun. Henry stated that Moore had talked about getting a gun, but that he told Moore that he was not interested. Henry further stated that he told James Snodgrass, the superintendent of the facility, that someone was planning to bring in a gun. Snodgrass denied this at trial.

At trial, Mrs. Moore was unable to positively identify Henry as the other man present when she met with her husband at the correctional facility. She did testify that the man she met, whom she believed to be Wayne Henry, was known to her by the nickname "Shadow." She pointed to Henry in the courtroom and indicated that if he were the same man, he had shaved his beard and cut his hair. One of the Norfolk police officers involved in the investigation testified that Henry's appearance was different at trial because he had trimmed his beard and hair and was better dressed.

Henry argues that because Mrs. Moore was unable to positively identify him at trial, there was insufficient evidence to prove beyond a reasonable doubt that he was a participant in conspiring to

bring a gun and conspiring to bring marijuana into the correctional facility. We disagree.

In determining the sufficiency of the evidence, we must consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. *Stockton v. Commonwealth,* 227 Va. 124, 145, 314 S.E.2d 371, 385 (1984), *cert. denied,* 469 U.S. 873 (1985). The judgment should be affirmed unless it appears from the evidence that it is plainly wrong or without evidence to support it. Code § 8.01-680; *Stockton,* 227 Va. at 145-46, 314 S.E.2d at 385; *Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Viewed in the light most favorable to the Commonwealth, the evidence and all reasonable inferences drawn therefrom support a finding by the jury beyond a reasonable doubt that Henry conspired to bring a gun and conspired to bring marijuana into the correctional facility. The letter written by Moore to his wife implicates Henry in the plan, referring to him as "Shadow." Mrs. Moore, although unable to positively identify Henry at trial, testified that on at least two occasions, she met with her husband and a man known to her by the name Wayne John Henry and "Shadow," regarding the conspiracy. Mrs. Moore stated further that at the meeting with Glass, she was to deliver marijuana and a gun, but due to short notice, was unable to provide him with marijuana. Glass told the police that Henry had sent him to get the gun from Mrs. Moore.

Finally, by Henry's own admission, he participated in the conspiracy to send Glass to get marijuana from Mrs. Moore at the Junior Market. Whether his participation extended to the gun was in conflict from the evidence. Henry claimed to have told Snodgrass about a plan to bring in a gun, but Snodgrass denied ever receiving this information.

The evidence against Henry is sufficient to support his convictions. We cannot say that the judgment of the trial court is plainly wrong or without evidence to support it.

Henry argues that venue was not proper in the Circuit Court for the City of Norfolk because the offense was not committed there. We disagree. Henry's prosecution was pursuant to Code § 18.2-474.1, which makes conspiring to deliver drugs to a prisoner

a Class 5 felony and conspiring to deliver a firearm to a prisoner a Class 3 felony. He argues that because his prosecution was pursuant to Code § 18.2-474.1 rather than Code § 18.2-22[1] (conspiracy to commit a felony), venue is determined by Code § 19.2-244, which provides that venue is proper where the offense was committed. While we may agree that prosecution for the conspiracies is proper where the offenses were committed, it does not necessarily follow that the offense of conspiracy is committed solely in the jurisdiction where the "agreement" was made.

Under federal law, it is a well settled principle of conspiracy law that venue is proper in any district in which an act in furtherance of the conspiracy was committed. *Hyde* v. *United States,* 225 U.S. 347 (1912); *United States* v. *Anderson,* 611 F.2d 504, 509 n.5 (4th Cir. 1979); *United States* v. *Oster,* 580 F. Supp. 599, 601 n.5 (S.D.W. Va. 1984). Because conspiracy is a continuing offense, venue may be proper in more than one place. *See Short* v. *United States,* 91 F.2d 614, 621 (4th Cir. 1937). Each member of a conspiracy is responsible for the acts of the others in furtherance of the conspiracy, and all conspirators, even those without knowledge of the particular act, may be tried where any of those acts are performed. *United States* v. *Snead,* 527 F.2d 590, 591 (4th Cir. 1975).

The rationale for this view of venue in a conspiracy case was described in *Hyde* v. *United States,* 225 U.S. 347 (1912):

> If conspirators enter into the illegal agreement in one county, the crime is perpetrated there, and they may be immediately prosecuted; but the proceedings against them must be in that county. If they go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county without any evidence of an express renewal of their agreement. *The law considers that wherever they act, there they renew, or perhaps to speak more properly, they continue, their agreement, and this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design.* In this respect, conspiracy resembles treason in England, when directed against the life of the King. The crime consists in imagining the death of the King. In contemplation of law,

---

[1] Code § 18.2-22, the general conspiracy statute, provides that jurisdiction is proper in any county or city wherein any part of the conspiracy is planned or in any county or city wherein any act is done toward the consummation of the conspiracy.

the crime is committed wherever the traitor is and furnishes proof of his wicked intention by the exhibition of any overt act.

*Id.* at 365-66 (quoting *People* v. *Mather,* 4 Wend. (N.Y.) 229, 259-60 (1830) (emphasis added)). Additionally, the Virginia legislature has incorporated this view of venue in conspiracy cases into Code § 18.2-22, the general conspiracy statute.

The fact that Henry was prosecuted under a statute defining a specific type of conspiracy rather than under the general conspiracy statute does not change the nature of the offense, and should not change the law applicable to conspiracies generally, including venue. We hold that, under Code § 19.2-244, the crime of conspiracy is deemed to have been committed in any city or county in which an act in furtherance of the conspiracy took place, as well as in the place where the conspiracy was entered into. The fact that the agreement forming the basis of the conspiracy may have been entered into in Chesapeake, the place where Henry was incarcerated, does not restrict venue to Chesapeake only.

The evidence of acts done in furtherance of the conspiracies within the City of Norfolk includes the letter received by Mrs. Moore in Norfolk requesting her assistance in the conspiracy, the phone calls from Glass to Mrs. Moore in Norfolk to arrange a meeting, and the actual meeting between Mrs. Moore and Glass at Junior Market in Norfolk. The fact that Mrs. Moore was able to provide Glass with only a gun at the meeting does not negate an overt act in furtherance of the conspiracy to bring marijuana into a correctional facility. It was planned that Mrs. Moore would deliver marijuana as well as a gun. It is reasonable to infer from all the evidence surrounding this meeting that Glass went fully expecting to come away with marijuana as well as a gun. This is sufficient to constitute an overt act in furtherance of both conspiracies. We, therefore, conclude that venue for both conspiracy charges was proper in the Circuit Court for the City of Norfolk.

Because we find no error in the convictions of the defendant, the judgment of the trial court is

*Affirmed.*

Coleman, J., and Hodges, J., concurred.