### Richmond

OSCAR MARION BARBER

v.

COMMONWEALTH OF VIRGINIA

No. 0054-86

Decided October 6, 1987

COUNSEL

Murray J. Janus (Dennis W. Dohnal; Bremner, Baber & Janus, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General of Virginia, on brief), for appellee.

OPINION

**DUFF, J.** — Oscar Marion Barber appeals from a conviction of conspiracy to distribute more than five pounds of marijuana in violation of Code §§ 18.2-248.1 and 18.2-256. He contends that the judgment should be reversed because: (1) the evidence was insufficient as a matter of law to support the conspiracy conviction; (2) the trial court erred by admitting irrelevant and prejudicial evidence of drug activities of alleged coconspirators; (3) the trial court erred by admitting evidence of similar acts by him and others that were irrelevant and prejudicial; and (4) the evidence was insufficient to establish venue in Henrico County. We find no reversible error and affirm the conviction.

■ Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting it all reasonable inferences fairly deducible therefrom. *Dukes v. Commonwealth*, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984); *Crumble v. Commonwealth*, 2 Va. App. 231, 233, 343 S.E.2d 359, 361 (1986). A conviction will be affirmed unless it appears from the evidence that it is plainly wrong or without evidence to support it. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *Henry v. Commonwealth*, 2 Va. App. 194, 197, 342 S.E.2d 655, 656 (1986).

The record reveals that in early June 1983, Barber asked David Broughman about a place where he could store marijuana. In response to this inquiry, Broughman introduced Barber to Ronald Leonituk. Leonituk owned a farm in James City County and had previously stored marijuana for Broughman. Barber and Leonituk agreed that the latter would store marijuana in his basement for $10 a pound. Three weeks later, approximately 800 pounds of marijuana were delivered in a recreational vehicle driven by Robert Brent. The marijuana was packaged in twenty-three bags, each weighing thirty-five to forty pounds. Barber helped unload the bags from the vehicle and then returned a few days later to weigh the marijuana and to give Leonituk a partial payment of $2,000.

In late July 1983, Broughman purchased approximately 500 pounds of marijuana from William Berger and stored it at William Messer's home in Henrico County. Broughman, who was serving a jail sentence on a work release basis, weighed and repackaged the marijuana and subsequently made several trips to pick up various quantities for distribution and sale. On August 4, 1983, Broughman decided to flee the area. He took with him as many bales of marijuana as he could fit into his vehicle and left approximately 150 pounds with Messer, instructing him to sell it.

When Barber learned that Broughman had left, he asked Leonituk to find out who owed Broughman money. Apparently Broughman owed Barber money for drugs that had been delivered on consignment. Leonituk visited various individuals without results; however, he did learn of the 150 pounds that Broughman had left at Messer's residence. He related this information to Barber, who then instructed him to pick up the 150 pounds and store it with the marijuana that was already housed in his basement.

Approximately two days later, Barber and Leonituk became concerned that the police might come to investigate Broughman's flight. Therefore, they decided to move the marijuana to Carl Soles' home in King and Queen County. Soles met Barber and Leonituk the following Saturday evening, and loaded part of the marijuana into the back of Soles' pickup truck, covered it with plywood and a mattress, and transported it to his residence. At this time, Barber gave Leonituk $6,000 and four pounds of marijuana as compensation for the use of his basement. Leonituk also took twenty-three pounds, which he subsequently sold at $600 per pound and then remitted $500 per pound to Barber.

Soles received $10,000 for storing the marijuana for Barber for approximately two or three weeks. During that time, Barber made several trips to retrieve one or two bales until the entire amount was removed from Soles' residence.

Evidence was also presented regarding a prior transaction involving Soles, Barber, and Broughman that occurred in New Kent County in February 1983 (New Kent conspiracy).[1] The pertinent facts were that Barber arranged for Soles to store and distribute marijuana for $10,000; that Barber removed several bales of marijuana from Soles' garage over a four- to six-week period and delivered them to Broughman; and that Barber and Broughman agreed that the latter would sell marijuana on a consignment basis. Barber objected to this evidence on the ground that it was irrelevant to the Henrico County conspiracy. The trial court overruled the objection, holding that it was relevant to show the nexus between the parties and that it was admissible to prove Barber's intent or common scheme or plan.

I.

Barber contends that the evidence was insufficient as a matter of law to establish that he conspired to distribute 950 pounds of marijuana. Specifically, he argues that the evidence that Leonituk obtained approximately 150 pounds of marijuana from Messer's residence upon his instructions was insufficient to constitute part of the alleged conspiracy.

---

[1] Broughman was separately indicted for the New Kent conspiracy and pled guilty to the charge after his conviction in the present case.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" *Cartwright v. Commonwealth*, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982) (quoting *Falden v. Commonwealth*, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)); *see Amato v. Commonwealth*, 3 Va. App. 544, 551, 352 S.E.2d 4, 8 (1987). A conspiracy is committed when the agreement to commit the offense is complete. The initiation of an overt act in furtherance of the commission of the substantive offense is not required. *Ramsey v. Commonwealth*, 2 Va. App. 265, 270, 343 S.E.2d 465, 469 (1986).

The elements of a conspiracy may be proved by circumstantial evidence. *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982). "[A] common purpose and plan may be inferred from a development and collocation of circumstances." *United States v. Godel*, 361 F.2d 21, 23 (4th Cir.), *cert. denied*, 385 U.S. 838 (1966) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)). "Where it is shown that the defendants by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object." *Amato v. Commonwealth*, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (quoting 16 Am. Jur. 2d *Conspiracy* § 42 (1979)).

Based upon our review of the record, we find that there is ample evidence from which the jury could conclude that Barber conspired to distribute both the 800 pounds originally stored by Leonituk in James City County and the 150 pounds moved by Leonituk at Barber's direction from Messer's house in Henrico County to Leonituk's residence. The sequence of events supports the inference that Barber acted in concert with Leonituk and others to receive, transport, and store the marijuana with the intent to distribute it.

Barber contends that the two transactions were improperly joined in one conspiracy. In determining whether the prosecution has demonstrated a single conspiracy or multiple conspiracies, the Fourth Circuit has employed a flexible application of the "totality of circumstances" test. In *United States v. MacDougall*, 790 F.2d 1135 (4th Cir. 1986), the court identified the following factors as probative to this determination: (1) time periods in which the activities occurred; (2) the statutory offenses as charged in the in-

dictments; (3) the places where the activities occurred; (4) the persons acting as coconspirators; and (5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted. *Id.* at 1144.

In applying these factors to the present case, we find that the jury could properly infer from the totality of the circumstances that the Commonwealth demonstrated a single conspiracy. Each transaction involved Barber, Leonituk, and others and occurred at approximately the same time, and resulted in the commingling of the two loads of marijuana. The nature and scope of the activities set forth in the indictment involved the identical offenses of possession and distribution of marijuana. A pattern of mutual cooperation took place among the various parties. Both transactions involved an agreement between Barber and Leonituk in which Leonituk agreed to store marijuana for Barber until Barber distributed it. Accordingly, we find that the evidence was sufficient as a matter of law to establish that the activities relating to the marijuana obtained from the Messer residence were acts in furtherance of a single conspiracy.

## II.

Barber contends that the trial court erred in admitting evidence of the drug activities of his alleged coconspirators, Broughman, Berger, Messer, and Leonituk. Specifically, he objects to the testimony regarding Broughman's purchase of 500 pounds of marijuana from Berger, which was stored at Messer's residence in Henrico County and then picked up by Leonituk and placed in his basement. When a conspiracy has been proven, "the acts and declarations of any of the conspirators, in furtherance of the object of the conspiracy, are admissible evidence against each and all of them, though such acts and declarations were not done and said in the presence of all." *Amato*, 3 Va. App. at 552, 352 S.E.2d at 9 (quoting *Sands v. Commonwealth*, 62 Va. (21 Gratt.) 871, 895 (1872)).

And they are admissible even against a conspirator who did not accede to the conspiracy until after they were done and said. Each conspirator is the criminal agent of every other, and when he accedes to the conspiracy he sanctions what may have been previously done or said by the others, or any

of them, in furtherance of the common object.

*Id.*

Upon review of the record, we find that the Commonwealth's evidence established a *prima facie* case of conspiracy and, therefore, the trial court did not err in admitting evidence of acts of coconspirators in furtherance of that conspiracy.

The purchase and storage of the marijuana at the Messer residence and the retrieval and storage by Leonituk were performed pursuant to a common scheme or plan of which Barber was a part. Barber was bound by these actions even though he did not have knowledge of the details of the original purchase of the 500 pounds or the manner in which the remaining 150 pounds were picked up, transported and stored by Leonituk (the 150 pounds were part of the original 500 pounds purchased by Broughman from Berger). Liability as a conspirator is not dependent upon knowledge of the details and the scope of the conspiracy or the identity and role of each coconspirator. *Id.*

The contested testimony was also relevant to show the origin of the second load of marijuana. The record contains ample evidence from which the jury could infer that Barber was an active participant in a plan to distribute marijuana. A trial court has great latitude in the admission of evidence indicating the background and the development of a conspiracy. *United States v. Cruz,* 785 F.2d 399, 408 (2d Cir. 1982).

### III.

Barber argues that the trial court erred in admitting evidence of his participation in the February 1983 New Kent conspiracy because it constituted improper evidence of other crimes. In response, the Commonwealth contends that no error was committed because the evidence was admissible to show Barber's intent to distribute the marijuana involved in the present charge and Barber's common scheme or plan.

As a general rule, evidence of other criminal acts by the accused is inadmissible to prove the particular crime charged. *Stockton v. Commonwealth,* 227 Va. 124, 142, 314 S.E.2d 371, 383, *cert. denied,* 469 U.S. 873 (1984); *Kirkpatrick v. Common-*

*wealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). However, the exceptions to this rule are as well established as the rule itself. Evidence of other offenses is admissible if it is relevant to an issue or element in the present case, for example, where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. *Sutphin v. Commonwealth*, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985). Also, evidence of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part. *Stockton*, 227 Va. at 142, 314 S.E.2d at 383; *Kirkpatrick*, 211 Va. at 272, 176 S.E.2d at 805. With respect to such exceptions, the test is whether "the legitimate probative value outweighs the incidental prejudice to the accused." *Hawks v. Commonwealth*, 228 Va. 244, 247, 321 S.E.2d 650, 652 (1984) (quoting *Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)).

Application of the general scheme exception is particularly appropriate where the accused is on trial for conspiracy. *See Morton v. Commonwealth*, 227 Va. 216, 223, 315 S.E.2d 224, 228 (1984); *Dorantes v. Commonwealth*, 222 Va. 383, 385, 281 S.E.2d 823, 824 (1981). However, the prior offense "must be closely related in time *and* tend to show a general scheme or guilty knowledge and intent." *Sutphin*, 1 Va. App. at 246, 337 S.E.2d at 899 (citing *Sloan v. Commonwealth*, 199 Va. 877, 881, 102 S.E.2d 278, 281 (1958)).

In the present case, evidence of Barber's arrangement with Broughman and Soles to distribute marijuana was relevant to show the planning and background of the conspiracy. The parallel nature of the facts is significant; the prior transaction involved the same drugs and role by the defendant, and included similar parties.

Barber's conduct was highly analogous and quite close in time (within six months) to the conspiracy alleged in the indictment. In the New Kent conspiracy, Barber arranged for the storage of a large quantity of marijuana for $10,000 and systematically removed from Soles' property several bales at a time over a four to six-week period. This conduct was identical to the conduct described in the indictment in the present case. Thus, its probative value is clear. *See United States v. Percy*, 765 F.2d 1199, 1203-04 (4th Cir. 1985) (where the defendant was charged with conspir-

acy to distribute cocaine, the court properly admitted testimony of a coconspirator that the defendant had sold him cocaine on several occasions one to two years prior to the offense charged); *United States v. Beahm*, 664 F.2d 414, 416-17 (4th Cir. 1981) (where the defendant was charged with taking indecent liberties with children, the court properly admitted testimony of two male witnesses that the defendant made sexual advances to them within three years prior to the offenses charged).

Moreover, in the New Kent conspiracy, it was clear that Barber transferred the marijuana to Broughman and others and that he profited from its distribution. This evidence was relevant to establish Barber's intent to distribute marijuana in the present case.

In *United States v. Liefer*, 778 F.2d 1236 (7th Cir. 1985), the defendant was charged with conspiracy to distribute 1,000 pounds of marijuana. Evidence was admitted that on a prior occasion, a load of marijuana had been removed from the defendant's farm because the low quality had prevented the defendant from distributing it. The court admitted the evidence on the ground that it was probative of the defendant's specific intent to distribute, an essential element of the crime charged. *Id.* at 1243.

Accordingly, we find that the evidence of the New Kent conspiracy was properly admitted to prove Barber's intent and to show that both conspiracies were part of a common scheme or plan.[2] We also find that the probative value of the testimony greatly outweighed any prejudicial effect. Prejudice was limited by the court's cautionary instruction that the evidence was not to be considered in proving the crime charged or in determining guilt or punishment. Therefore, we find no abuse of discretion by the trial court.

## IV.

Finally, we address Barber's claim that venue was not properly established in Henrico County. Under Code § 18.2-22,

---

[2] The Commonwealth is not estopped from taking inconsistent positions by contending that the New Kent evidence was admissible to show a single conspiracy and yet trying Barber separately in New Kent County after his conviction in the present case. *See In Re: Department of Corrections*, 222 Va. 454, 465, 281 S.E.2d 857, 863 (1981). Barber filed a double jeopardy motion, which was denied. He later pled guilty to the New Kent charge, thus preventing appellate review of his double jeopardy claim.

venue is proper in any city or county where an act in furtherance of the conspiracy took place, as well as the place where the conspiracy was entered into. *Henry v. Commonwealth*, 2 Va. App. 194, 199, 342 S.E.2d 655, 657-58 (1986); *accord Hyde v. United States*, 225 U.S. 347 (1912); *United States v. Anderson*, 611 F.2d 504, 509 n.5 (4th Cir. 1979). Because conspiracy is a continuing offense, venue may be proper in more than one place. *Short v. United States*, 91 F.2d 614, 621 (4th Cir. 1937). "Each member of a conspiracy is responsible for the acts of others in furtherance of the conspiracy, and all conspirators, even those without knowledge of the particular act, may be tried where any of those acts are performed." *Henry*, 2 Va. App. at 198, 342 S.E.2d at 657 (citing *United States v. Snead*, 527 F.2d 590, 591 (4th Cir. 1975)).

We find that Barber's directing Leonituk to retrieve the marijuana at Messer's house in Henrico County, which was then stored with the other marijuana held for Barber, was an act in furtherance of the conspiracy. Accordingly, we conclude that venue was proper in the Circuit Court for Henrico County.

For the reasons stated herein, the judgment of conviction is affirmed.

*Affirmed.*

Barrow, J., and Cole, J., concurred.