COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Annunziata and Bumgardner
Argued at Salem, Virginia


PATRICK HOWARD BAILEY

MEMORANDUM OPINION[*] BY
v.    Record No. 0266-99-4     JUDGE RUDOLPH BUMGARDNER, III
APRIL 18, 2000

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
John E. Wetsel, Jr., Judge

Anthony G. Spencer (John W. Luxton;
Morchower, Luxton & Whaley, on briefs), for
appellant.

Donald E. Jeffrey, III, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


A jury convicted Patrick Howard Bailey of conspiring to
distribute cocaine and transporting more than one ounce of
cocaine into the Commonwealth.  He contends on appeal that (1)
the evidence was insufficient to support the conspiracy
convictions and (2) his constitutional rights were violated
because he was convicted with evidence that contradicted the
Commonwealth's representations in the extradition proceedings.
Finding no error, we affirm the defendant's convictions.

"On appeal, 'we review the evidence in the light most
favorable to the Commonwealth, granting to it all reasonable

---

[*] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).  In so doing, we discard the defendant's evidence that conflicts with that of the Commonwealth.  See Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988).  The trial court's ruling will not be disturbed on appeal unless plainly wrong or unsupported by the evidence.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The defendant lived in New York where he met Nicole Williams in 1993 or 1994.  Several months later, she agreed to "make a run" to Virginia for him.  Williams made five trips to Virginia for the defendant between Labor Day weekend 1994 and February 3, 1995, when she was arrested.  The defendant called Williams to arrange a trip shortly before he wanted her to leave.  He advised her to dress conservatively and, on each occasion, brought a suitcase already packed with drugs to her house.  The defendant took Williams to the bus station, purchased her ticket, and gave her money for expenses.  One time, he gave her money for a cab to the station and for the ticket.  Williams usually took the 2:00 a.m. bus to Winchester, but she always traveled alone.

When Williams arrived in Winchester, either the defendant, George Curry, or Breton "Woody" Alexander met her and took her to Alexander's house.  Each time, Alexander took the suitcase

-

into another room, and sometimes the defendant or Curry accompanied him. When Alexander came out, he carried wrappings of aluminum foil, duct tape, and plastic wrap. Once Williams saw Alexander holding a sandwich bag of marijuana. Williams always left the suitcase and returned to New York the same day she had arrived. When she got back, she paged the defendant and he paid her from $300 to $1,000 per trip.

On her fifth trip, February 3, 1995, drug task force officers approached Williams when she arrived at the Winchester bus station. She consented to a search of the suitcase, and the officers found five packages wrapped in duct tape with dryer sheets exposed to conceal the odor. The wrapping was consistent with transportation of illegal drugs. The two brick-shaped packages contained approximately two pounds of marijuana, and the three egg-shaped packages contained eleven ounces of cocaine. The approximate street value of the marijuana was $6,000 and of the cocaine was $30,800.

Williams denied owning the bag. She said a black Jamaican man in New York City named Patrick had given it to her to bring to Winchester. She had his pager number and expected to meet a man named George in Winchester. At the officers' request, Williams paged Patrick. Ten minutes later, George Curry telephoned Williams and agreed to meet her at a Food Lion store. When Curry arrived, the police arrested Williams and him.

-

Nicole Williams pled guilty to possession with intent to distribute cocaine and marijuana.

Curry testified that the defendant asked him to pick up Williams on several occasions, but he denied knowing Williams was transporting drugs. He said that if he had known she was involved with drugs, he would not have picked her up. He told the defendant that he wanted nothing to do with cocaine when the defendant had asked him if he knew anyone who could "get rid of some coke." He did admit to being present once when Alexander opened the suitcase Williams had delivered and removed marijuana from the bag. Another time, after Williams arrived, he saw Alexander with cocaine. He also saw the defendant with cocaine. Curry admitted that the defendant paid him $100 to hold a package of what Curry believed to be marijuana. Curry was aware that the defendant had other women "bringing stuff down" to Virginia, and admitted he had picked up at least one other woman from the bus station for the defendant. Curry pled guilty to conspiracy to distribute cocaine and marijuana.

During a search of Curry's residence, the police recovered telephone bills with calls to the defendant's telephone number in Brooklyn and a photograph of the defendant and Alexander in front of a Christmas tree. During a search of Alexander's trailer, the police recovered a marijuana cigarette. At Alexander's trailer, the police also found the defendant's automobile insurance receipt dated July 25, 1994. A page of a

-

telephone bill dated February 16, 1994 showed calls placed to two New York telephone numbers registered to the defendant. A sheet of paper attached to the phone bill listed Karen Bailey, the defendant's wife, with a Brooklyn address, telephone number 718-284-1076, and the name "Patrick" crossed out and "Karen" written over it. The police followed footprints from Alexander's trailer and found a jar containing approximately four ounces of marijuana under a mattress in the nearby woods. Under the trailer, they found wrappings similar to those found on February 3, 1995.

The defendant testified and denied ever asking Williams to make a trip to Virginia for him, ever giving her a suitcase to deliver to Winchester, ever giving her his pager number, or ever paying her for making a trip. He denied asking Curry or Alexander to pick Williams up, being in Winchester on Labor Day weekend in 1994, or being involved with drugs. While he conceded that the evidence would establish his intent to transport and distribute cocaine, he argues the evidence is insufficient to support a conviction of conspiracy.

Conspiracy is "'an agreement between two or more persons by some concerted action to commit an offense.'" Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982) (citation omitted). Proof of the existence of an agreement is an essential element to establish the crime of conspiracy. See Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 48

-

(1991).  However, proof of an explicit, formal agreement is not required.  The elements of conspiracy may, and frequently must, be proved by circumstantial evidence.  See Wright, 224 Va. at 505, 297 S.E.2d at 713 (can infer that the defendants intended to commit robbery rather than another crime); Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992) (evidence sufficient to prove conspiracy to commit murder); Zuniga v. Commonwealth, 7 Va. App. 523, 531, 375 S.E.2d 381, 386 (1988) (defendant only required to know "the essential nature of the scheme"); Stultz v. Commonwealth, 6 Va. App. 439, 443, 369 S.E.2d 215, 217 (1988) (evidence permits reasonable inference that parties agreed to further prostitution).

"'The existence of an unlawful and inherently covert agreement can be inferred from the overt conduct of the parties.'"  Floyd v. Commonwealth, 219 Va. 575, 581, 249 S.E.2d 171, 174 (1978) (citation omitted).  See Barber v. Commonwealth, 5 Va. App. 172, 177, 360 S.E.2d 888, 890 (1987) (sequence of events supports inference that defendant and others acted in concert and planned to transport marijuana).  "'"A common purpose and plan may be inferred from a development and collocation of circumstances."'"  Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (plan need not be completed to support conspiracy conviction) (citations omitted). Whether the defendant's "'conduct constituted knowing participation in the scheme or merely inadvertence . . . was for

-

the jury to decide.'" Floyd, 219 Va. at 581, 275 S.E.2d at 174 (quoting United States v. Harris, 433 F.2d 333, 335 (4th Cir. 1970)). Where, as here, it has been shown that the conspirators "'by their acts pursued the same object, one performing one part and the other performing another part so as to complete it . . ., the jury will be justified in concluding that they were engaged in a conspiracy to effect that object.'" Amato, 3 Va. App. at 552, 352 S.E.2d at 9 (quoting 16 Am. Jur. 2d Conspiracy § 42 (1979)).

The fact that there was no evidence of an explicit agreement to transport and distribute cocaine between the defendant and Williams does not preclude his conviction. The evidence permitted the jury to infer that an agreement existed. It revealed a planned and organized effort to transport drugs into Virginia over the course of several months. The defendant was intimately involved in the conspiracy. He knew Alexander and Curry and introduced them to Williams. All three had the defendant's telephone or pager number. The defendant arranged and paid for Williams's trips. He packaged the drugs, delivered them to his runner, and arranged for someone to meet her when she arrived in Winchester. See United States v. Burgos, 94 F.3d 849, 868-70 (4th Cir. 1996), cert. denied, 519 U.S. 1151 (1997) (factors which further circumstantial evidence that defendant involved in conspiracy include being acquainted with other conspirators, exchanging telephone numbers, and purchasing their

-

train tickets).  The record, considered in the light most favorable to the Commonwealth, clearly supports the inference that the defendant had guilty knowledge.  See Amato, 3 Va. App. at 552, 352 S.E.2d at 9.

Williams knew she was transporting drugs of the defendant, and when the police arrested her, they found cocaine wrapped in foil and saran wrap.  The wrappings were similar to those Williams saw when Alexander unpacked previous deliveries.  She pled guilty to distribution of both marijuana and cocaine.  The evidence also permits the inference that Curry knew both cocaine and marijuana were involved.  Curry saw Alexander with cocaine after a delivery by Williams, and the defendant once asked him who could get rid of some coke for him.  Curry pled guilty to both cocaine and marijuana offenses.  The evidence shows a relationship between the group's connection to marijuana and cocaine so close that proof of conspiracy to distribute one tends to establish a conspiracy to distribute the other.  See Morton v. Commonwealth, 227 Va. 216, 223, 315 S.E.2d 224, 228, cert. denied, 469 U.S. 862 (1984).

The fact finder was entitled to disbelieve Williams and Curry's testimony that that they were unaware cocaine was involved.  The fact finder, who determines the credibility of the witnesses and the weight accorded their testimony, has wide discretion to accept or reject the testimony in whole or in part.  See Bradley v. Commonwealth, 196 Va. 1126, 1136, 86

-

S.E.2d 828, 834 (1955); Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). The fact finder is also entitled to disbelieve the self-serving testimony of the accused and to conclude that he is lying to conceal his guilt. See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).

The repeated transportation arrangement is "consistent with '[t]he step from knowledge to intent and agreement.'" Zuniga, 7 Va. App. at 523, 375 S.E.2d at 386 (citation omitted). The actions of those involved "were consistent with illegality and inconsistent with legality." Wright, 224 Va. at 505, 297 S.E.2d at 713. The law is clear; circumstantial evidence is sufficient to establish a conspiracy. Considering the entire record, the evidence supports a reasonable inference that there was a conspiracy to transport and distribute cocaine into Virginia.

Finally, the defendant asserts "[t]he trial court erred in convicting Mr. Bailey based on alleged conduct in contradiction of the Commonwealth's representations in the extradition proceedings." The nature of this contention is not clear, but to the extent it is an assertion that his rights to due process were violated, such a claim is barred. The defendant did not present that argument to the trial court. See Rule 5A:18. To the extent it constitutes a collateral attack on the extradition proceeding, this appeal is not the proper means of challenging extradition proceedings. See Code § 19.2-95. To the extent it

-

is a challenge that the evidence presented at trial conflicted with that presented at the extradition proceedings, we find no error.

For the foregoing reasons, we affirm the defendant's convictions.

<u>Affirmed</u>.