COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Huff and O'Brien
Argued by videoconference

UNPUBLISHED

ISADORE MIRACLE HUMPHREY, II

v.        Record No. 1678-19-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
OCTOBER 27, 2020

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Migliozzi, Jr., Judge

B. Thomas Reed for appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Appellant Isadore Miracle Humphrey, II appeals from a decision of the Circuit Court of

the City of Norfolk finding him guilty of attempted robbery, malicious wounding, use of a

firearm in the commission of a felony, and conspiracy to commit robbery.  He contends that the

trial court erred in denying his motion to strike the Commonwealth's evidence because "the

Commonwealth's evidence did not prove beyond a reasonable doubt that Humphrey acted as a

principal in the second degree . . . or in concert of action with the principal in the first degree."

Consequently, Humphrey argues that the evidence was insufficient as a matter of law to convict

him in this case.

## I. BACKGROUND

"When the sufficiency of the evidence is challenged on appeal, we review the evidence in

the light most favorable to the prevailing party at trial, in this case the Commonwealth, and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

accord to it all inferences fairly drawn from the evidence." Grimes v. Commonwealth, 288 Va. 314, 318 (2014) (citing Viney v. Commonwealth, 269 Va. 296, 299 (2005)).  So viewed, the evidence at trial showed that on July 11, 2018, O.M.[1] attempted to sell her iPhone on Facebook Marketplace.  She exchanged messages with a user whose profile displayed the name "Timmy White," along with a picture of a man, a woman, and three young children.  O.M. believed that she was exchanging messages with the man in the picture.  O.M. agreed to meet at an address in Norfolk that "Timmy" provided in order to complete the sale.  A few minutes before O.M. arrived, she received a message from "Timmy" explaining that he needed to leave for work and would leave the money with his son.  O.M. confirmed that she received his message, and "Timmy" said he would "tell [his] son to be on the porch."  When O.M. arrived at the home, she saw two young men, including Humphrey, sitting on the porch.  She testified that both young men were "wearing red hoodies" at the time.  Upon seeing these two young men, O.M. "asked something along the lines [of] if they were the ones that were going to buy the phone."  Humphrey responded, "Yeah. That's him," and pointed to Curtis Harmon, the other young man on the porch.

Harmon approached O.M.'s vehicle, walked around to the passenger side, and opened the passenger side door.  O.M. showed Harmon the iPhone, told him about its specifications, and allowed him to inspect the phone.  O.M. confirmed the price, and Harmon replied, "Okay.  My dad told me to give it to you."  Harmon then reached for his pocket, pulled out a black handgun, and pointed it at O.M.'s head.  Harmon told O.M., "Give me everything."  O.M. replied, "Don't shoot," and attempted to duck, at which point Harmon shot O.M. in the face.

---

[1] We use O.M.'s initials in an attempt to better protect the victim's privacy.

Norfolk Police Officer Gary Winnie responded to a report of an attempted robbery and arrived at a nearby apartment where individuals matching the description of the suspects had been seen running inside. The apartment was later identified as Humphrey's home address. At the apartment, Officer Winnie "saw a juvenile fitting the description that was put out and immediately detained him." With the consent of the apartment's leaseholder, police detectives searched the apartment. One of the searching detectives, Detective Steven Sweden, testified that they found a number of "red shirts" similar to the victim's description of the suspects' clothing that were strewn around one of the bedrooms. In addition, the detectives recovered a loaded black handgun, which was concealed under a mattress in the same bedroom. Subsequent forensic analysis revealed Humphrey's DNA on the magazine of the weapon.

A grand jury indicted Humphrey on charges of attempted robbery, malicious wounding, use of a firearm in the commission of a felony, and conspiracy to commit robbery. The Circuit Court of the City of Norfolk held a bench trial on the charges on April 15, 2019. At the conclusion of the Commonwealth's case-in-chief, Humphrey moved to strike the Commonwealth's evidence, arguing that the evidence was insufficient to establish that Humphrey acted as a principal in the second degree. Therefore, Humphrey argued, the evidence was insufficient to convict him for the crimes perpetrated by Harmon. The trial court denied the motion, finding Humphrey guilty of all four offenses. The court sentenced Humphrey to fourteen years of imprisonment, with an active term of four years and with ten years suspended. This appeal followed.

II. ANALYSIS

A. Standard of Review

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

- 3 -

doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly, 41 Va. App. at 257-58 (quoting Jackson, 443 U.S. at 319).

### B.  Humphrey's Convictions as a Principal in the Second Degree

Three of Humphrey's convictions – attempted robbery, malicious wounding, and use of a firearm in the commission of a felony – were predicated on the conduct of Harmon.  The trial court found Humphrey guilty of those offenses as a principal in the second degree, and convicted him accordingly.  See Code § 18.2-18 ("In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree . . . .").

As we explained in Rollston v. Commonwealth, 11 Va. App. 535, 539 (1991):

> "A principal in the second degree is one not the perpetrator, but
> present, aiding and abetting the act done, or keeping watch or
> guard at some convenient distance." Brown v. Commonwealth,
> 130 Va. 733, 736 (1921).  As for what constitutes "aiding and
> abetting," it is clear that mere presence and consent will not
> suffice. E.g., Underwood v. Commonwealth, 218 Va. 1045, 1048
> (1978).  The defendant's conduct must consist of "inciting,
> encouraging, advising or assisting in the [crime]." Frye v.
> Commonwealth, 231 Va. 370, 389 (1986).  It must be shown that
> the defendant procured, encouraged, countenanced, or approved
> commission of the crime. Augustine v. Commonwealth, 226 Va.
> 120, 124 (1983).  "To constitute one an aider and abettor, he must
> be guilty of some overt act, or he must share the criminal intent of

- 4 -

the principal." Triplett v. Commonwealth, 141 Va. 577, 586 (1925); see also Moehring v. Commonwealth, 223 Va. 564, 567 (1982).

Thus, a principal in the second degree must be present during the commission of the crime, and "must share the criminal intent of the party who actually committed the [crime] or be guilty of some overt act in furtherance thereof." Augustine, 226 Va. at 124. Because the overt act must be done "knowingly in furtherance of the commission of the crime," an accused's "lack of intent is usually a defense to a conviction as a principal in the second degree." McMorris v. Commonwealth, 276 Va. 500, 505 (2008). "The one exception exists," however, "when there was concert of action and the resulting crime, whether such crime was originally contemplated or not, is a natural and probable consequence of the intended wrongful act." Id. at 506 (citing Spradlin v. Commonwealth, 195 Va. 523, 528 (1954)). Consequently, "[l]ack of intent cannot be used as a defense when there was concert of action and the resulting crime was a natural and probable consequence of the intended wrongful act." Id. at 507 (citing Spradlin, 195 Va. at 528).

Humphrey argues that the evidence was insufficient to convict him as a principal in the second degree, because the evidence did not establish that he acted with the requisite intent. Instead, he contends "that presence and consent alone are insufficient to establish" his guilt in this case. Humphrey argues that the Commonwealth failed to present any evidence of an agreement between Humphrey and Harmon, instead relying on circumstantial evidence to prove that Humphrey acted with the requisite intent. Therefore, Humphrey argues, the trial court erred in denying his motion to strike the Commonwealth's evidence.

However, "[t]he Commonwealth can, and most often must, present circumstantial evidence to prove that a defendant aided or abetted in the commission of a crime." Id. at 506. "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a

conclusion.'" Stamper v. Commonwealth, 220 Va. 260, 273 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758, 764 (1919)). "In other words, in a circumstantial evidence case, such as the case currently before us, the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt of a defendant's guilty knowledge . . . ." Ervin v. Commonwealth, 57 Va. App. 495, 505 (2011) (*en banc*).

In this case, the evidence supports Humphrey's convictions as a principal in the second degree. Specifically, the record supports the trial court's finding that Humphrey was not merely present during the commission of Harmon's crimes, but that he committed an overt act knowingly in furtherance of those crimes, and that he shared in Harmon's criminal intent. Humphrey was present at the address given to O.M. by the fraudulent "Timmy White" persona. Humphrey's presence not only establishes a necessary precondition to his conviction as a principal in the second degree; in this particular case, his presence is itself also a relevant circumstance. His presence at the address provided by "Timmy White" is a circumstance which, in conjunction with the other evidence presented at trial, tends to prove that Humphrey knew about Harmon's criminal plan and shared Harmon's criminal intent. Moreover, Humphrey was not merely present at the scene, he also committed the overt act of pointing to Harmon and saying "Yeah. That's him," in response to O.M.'s question. The crux of O.M.'s question was whether the young men on the porch were there for the purpose of buying O.M.'s iPhone. Humphrey's affirmative response was an overt act – one that linked Harmon to the fraudulent "Timmy White" persona and assisted the criminal enterprise in doing so. In addition, nothing in the record indicates that Humphrey made any attempt to dissuade or discourage Harmon, or to negate the assistance Humphrey had provided by identifying Harmon to O.M. as the son of the person who contacted O.M. about purchasing the iPhone.

Furthermore, after the shooting, the parties immediately fled the scene. Well-settled principles establish that "[f]light following the commission of a crime is evidence of guilt . . . ." Clagett v. Commonwealth, 252 Va. 79, 93 (1996). In addition, the evidence went beyond mere flight from the scene in this case: Humphrey and Harmon fled to Humphrey's home. Detective Sweden testified that, once inside Humphrey's home, police detectives found a number of "red shirts" – similar to the victim's description of the clothing the suspects had been wearing during the attempted robbery and shooting – strewn around a bedroom. In the same bedroom, they discovered a black handgun – still loaded and concealed underneath a mattress – that was apparently used in the shooting and attempted robbery. Finally, Humphrey's DNA was found on the magazine of the firearm.[2]

In addition, we reject Humphrey's argument that this Court's decision in Jennings v. Commonwealth, 67 Va. App. 620 (2017), controls this case. Crucial to our decision in Jennings was the fact that "[a]side from the DNA profiles" found on the items in that case, "there was no other evidence presented by the Commonwealth as to the identity of the robber." Jennings, 67 Va. App. at 624. Here, the Commonwealth presented substantial and persuasive circumstantial evidence in addition to the evidence of Humphrey's DNA on the firearm's magazine. Noting also that "[t]he status of the accused as a principal in the second degree may be established by any combination of circumstantial evidence or direct evidence," Brickhouse v. Commonwealth,

---

[2] The evidence clearly shows that the firearm was loaded when the detectives discovered it stuffed under a mattress of the bed in a bedroom in Humphrey's home shortly after the crime occurred. The trial court could certainly infer that the location of Humphrey's DNA – on the magazine of a loaded gun – suggests that Humphrey handled the firearm before it was loaded and before it came into Harmon's possession. This is but one additional circumstance lending support to the trial court's conclusion that Humphrey was aware of and helped facilitate Harmon's criminal plan.

276 Va. 682, 687 (2008) (citing <u>Foster v. Commonwealth</u>, 179 Va. 96, 100 (1942)), we conclude that Humphrey's reliance on <u>Jennings</u> is misplaced.

In short, the evidence was sufficient for a rational factfinder to conclude that Humphrey acted as a principal in the second degree with regard to attempted robbery, malicious wounding, and use of a firearm in the commission of a felony. [3] Considering the totality of the circumstances, and the accumulation of various facts and inferences, each mounting upon the others, we cannot say that no rational factfinder could have concluded that Humphrey acted as a principal in the second degree here. Therefore, the trial court did not err in finding Humphrey guilty of those offenses.[4]

### C. Humphrey's Conviction for Conspiracy

Humphrey's fourth conviction was for conspiracy to commit robbery. Humphrey's sole assignment of error in this appeal alleges that the evidence was insufficient for the trial court to conclude that "Humphrey acted as a principal in the second degree [] or in concert of action with the principal in the first degree [Harmon]." However, the grand jury also charged that "[o]n or

---

[3] Having found the evidence sufficient as a principal in the second degree, we do not need to reach or address whether Humphrey could also have been convicted for each of Harmon's crimes based on co-conspirator liability, given Humphrey's conviction also for conspiracy to commit robbery. <u>See, e.g.</u>, <u>Brown v. Commonwealth</u>, 10 Va. App. 73, 81 (1990) ("Each member of a conspiracy is responsible for the acts of others in furtherance of the conspiracy, and all conspirators, even those without knowledge of the particular act, may be tried where any of those acts are performed." (quoting <u>Henry v. Commonwealth</u>, 2 Va. App. 194, 198 (1986))).

[4] In light of this holding, we do not address Humphrey's argument that the evidence failed to establish a concert of action. As the Virginia Supreme Court made clear in <u>McMorris</u>, the concert of action theory is an "exception" to the general rule that a principal in the second degree must either (1) commit an overt act knowingly in furtherance of the crime, or (2) share in the perpetrator's criminal intent. <u>McMorris</u>, 276 Va. at 505-06. Here, because a rational factfinder could have concluded that Humphrey committed an overt act knowingly in furtherance of the crime, as well as that Humphrey shared in Harmon's criminal intent, we do not need to also address or reach whether Humphrey also engaged in a concert of action with Harmon, the principal in the first degree.

about July 11, 2018, in the City of Norfolk, Isadore Miracle Humphrey II feloniously did conspire with another to rob O.M. of U. S. Currency and/or personal property having some value, with the use of a firearm or simulated firearm." Thus, Humphrey was charged as a party to the conspiracy – i.e., as a perpetrator or principal in the first degree.

At oral argument before this Court, counsel for Humphrey was asked whether he sought to contest the conviction for conspiracy on appeal. In response, counsel stated that he did contend that the evidence was insufficient to convict Humphrey of conspiracy, but acknowledged that he "perhaps failed procedurally to include that in the assignment of error." We agree with counsel for Humphrey that his only assignment of error on appeal to this Court does not encompass a challenge to the conspiracy conviction. Therefore, Rule 5A:12 does not allow Humphrey to expand his arguments beyond his assignment of error, even if he now maintains that the evidence was insufficient to convict him of conspiracy. See Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."). Consequently, Rule 5A:12 precludes Humphrey from arguing on appeal that the evidence was insufficient to convict him of conspiracy.[5]

## III. CONCLUSION

In short, Humphrey's convictions for attempted robbery, malicious wounding, and use of a firearm in the commission of a felony were supported by sufficient evidence for the trial court to conclude that Humphrey acted as a principal in the second degree. He was present during the

---

[5] We note that Humphrey's conviction for conspiracy to commit robbery required a finding of an agreement to commit robbery. Even if we were to assume that Humphrey's assignment of error encompasses a challenge to his conspiracy conviction, the evidence is sufficient for a rational factfinder to conclude that Humphrey agreed to rob O.M. The evidence supporting Humphrey's convictions as a principal in the second degree provides ample proof upon which a rational factfinder could have concluded that Humphrey also conspired with Harmon to rob O.M. of her iPhone.

commission of the crimes – and at the address given to O.M. by "Timmy White." He responded to O.M.'s question by pointing to and identifying Harmon as the son of the person who contacted her about purchasing the iPhone. The parties fled to Humphrey's home in the aftermath of the shooting. Clothing very similar to the description of the suspects' clothing during the crimes was recovered from the floor of a bedroom inside Humphrey's home. Furthermore, police found the loaded black handgun apparently used to shoot the victim concealed under a mattress in the same bedroom. Finally, Humphrey's DNA was discovered on the magazine of the firearm. Based on the totality of these circumstances, each mounting upon the others, we cannot say that no rational factfinder could have concluded that Humphrey committed an overt act knowingly in furtherance of Harmon's crimes – or that Humphrey shared in Harmon's criminal intent. Consequently, the trial court did not err in convicting Humphrey of attempted robbery, malicious wounding, and use of a firearm in the commission of a felony as a principal in the second degree.

Humphrey was also convicted of conspiracy to commit robbery as a party to the conspiracy (i.e., as a principal in the first degree). However, Humphrey's *sole* assignment of error to this Court challenges the sufficiency of the evidence for the trial court to conclude that he "acted as a principal in the second degree [] or in concert of action with the principal in the first degree [Harmon]." Therefore, we do not reach the merits of Humphrey's contention on brief that the evidence was insufficient to convict him of conspiracy to commit robbery because, as counsel acknowledges, that contention is not included in Humphrey's only assignment of error to this Court.

For all of these reasons, we uphold Humphrey's convictions for attempted robbery, malicious wounding, use of a firearm in the commission of a felony, and conspiracy to commit robbery.

<u>Affirmed.</u>