## Richmond

ROBERT THOMAS BROWN

v.

COMMONWEALTH OF VIRGINIA

No. 0207-85

Decided September 16, 1986

COUNSEL

G. Rodney Sager, Esq. (Susan Hansen and Gerald G. Lutkenhaus, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.** — This is an appeal of a conviction of conspiracy to distribute heroin which raises these issues: (1) was a conviction order of a co-conspirator admissible, (2) did the trial judge's conduct render the trial unfair, (3) was the evidence sufficient to sustain the allegations contained in the indictment, (4) was the Commonwealth's rebuttal evidence admissible to show a defense witness's bias, and (5) was the evidence describing the method of distributing and using heroin admissible. We conclude that the conviction order of the co-conspirator was inadmissible and that the trial judge's conduct of the trial impermissibly operated to prejudice the defense. For these reasons, we reverse. Because this case may be retried, we will also address the remaining issues.

The indictment charged that the defendant conspired with Floyd Donny Langhorne and others to sell and distribute heroin. Langhorne testified that for two to three years he had been buying heroin from the defendant. On April 13, 1984 he gave the defendant $10,000 to pay for heroin which the defendant delivered to him ten days later. The delivery occurred in Langhorne's car which was parked at a 7-Eleven in south Richmond. The next day

Langhorne met with three other men in a motel room where they divided the heroin into individual packages.

The defendant was staying at the same motel. He was registered in his proper name and stayed in a front room at the opposite end of the motel from where Langhorne and the others were located.

Two of the three other persons involved in packaging the heroin at the motel testified. One testified that he and Langhorne obtained the heroin two weeks earlier. The other testified that he had known the defendant prior to his being arrested. Both testified that they did not see Brown at the motel and that he was not associated with the cutting or distribution of this heroin.

Langhorne and the three others in the motel room were arrested as they left the motel parking lot, and the heroin was found in their automobile. The defendant was arrested elsewhere in Richmond.

These arrests followed a two-month wiretap investigation. Conversations between the defendant and Langhorne were recorded during this investigation and admitted into evidence. These conversations included no mention of heroin but did lead to a surveillance of Langhorne and the defendant at the 7-Eleven store on April 23.

## CO-CONSPIRATOR'S CONVICTION ORDER

During Langhorne's cross-examination he admitted that he had entered into a plea agreement which included the condition that he testify on behalf of the Commonwealth against the defendant. A copy of the written plea agreement was admitted into evidence on the defendant's motion; copies of the orders reflecting Langhorne's conviction and sentencing were admitted over defendant's objection. Langhorne's conviction order recited that he had been found "guilty of . . . conspiring with Robert Thomas Brown and others to sell and distribute heroin."

The introduction into evidence of a co-defendant's guilty plea and sentence is error. *Ward v. Commonwealth*, 205 Va. 564, 573, 138 S.E.2d 293, 300 (1964). The conviction and sentencing orders in this case went even further. They described the guilty

plea, the sentence imposed and, significantly, recited the judicial finding that Langhorne had conspired with the defendant to sell heroin, the very offense for which the defendant was on trial.

The Commonwealth contends that introduction of these orders was required in response to defense counsel's comments during his opening statement. In his opening statement defense counsel said that before Langhorne "decided to . . . come in here and point the finger at other people, he. was promised, or told that twenty years of his sentence in the [p]enitentiary would be suspended . . . on the condition that he testify against" the defendant. The plea agreement did in fact provide that imposition of Langhorne's sentence would be suspended for twenty years on condition that he testify against the defendant.

The Commonwealth argues that the orders were necessary to show that the plea agreement also contemplated Langhorne pleading guilty to the further charge of possession of heroin with intent to distribute and serving twenty years in the penitentiary on that offense. However, since the plea agreement stated precisely this, the orders were not needed.

After a luncheon recess, approximately an hour and a half after the orders were admitted, the trial judge advised the jury that Langhorne's "plea of guilty does not establish a crime for purposes of this case, and the court's rulings in that case does not establish a crime, or in any way, will the plea itself be considered as evidence against the defendant." This instruction was inadequate to assure that the jury would disregard the judicial finding expressed in the orders. Therefore, it is impossible to conclude that the error was not prejudicial, and the law presumes that it was. *Ward v. Commonwealth*, 205 Va. at 574, 138 S.E.2d at 300. We conclude that the introduction of the orders was error requiring reversal of the conviction.

## TRIAL JUDGE'S CONDUCT

The defendant also contends that the trial judge's conduct denied him a fair and impartial trial because he aided the prosecution and demeaned and curtailed the defense.

The trial judge's role in admitting the conviction orders of the co-defendant reflects the posture the trial judge assumed during

the course of this trial. Immediately following defense counsel's opening statement in which he described the contents of the plea agreement but did not mention the disposition of the separate charge of possession of heroin with intent to distribute, the court on its own initiative undertook to comment to the jury on those parts of the opening statements which he thought might have "mislead" the jury. He told them:

> [Defense counsel] also inadvertently referred to the sentence imposed upon Floyd Donny Langhorne pursuant to a plea bargain. The records of this court show that the defendant, Floyd Donny Langhorne, plead guilty to a charge of having possession of heroin with intent to distribute and was sentenced to twenty years in the penitentiary, none of which was suspended, and to pay a fine of $1,000.

> In addition, he plead guilty to the charge of conspiracy, and the court suspended imposition of sentence for a period of twenty years, which means that the court did not impose any sentence at all, but reserved the right to do so within the next twenty years, should the defendant violate the conditions of the suspension.

Upon the introduction of the plea agreement by defense counsel the trial judge went further. On his own initiative, he responded: "We will . . . introduce the order of conviction and the plea agreement. Mark them as Defendant's Exhibit 1." The trial judge then produced the order.

When defense counsel asked to see the order of conviction the court allowed him to do so but in the presence of the jury remarked: "You cannot go on half of the evidence and not go on all of it." Later, when defense counsel objected and asked that none of the documents be introduced, the trial judge overruled his objection and admitted the documents.

The appellant points out that the trial judge interrupted defense counsel eighty-one times during his examination of witnesses while he only interrupted the Commonwealth's Attorney twenty-four times; therefore, the appellant contends the trial judge demonstrated to the jury his support of the prosecution's case.

The character of these interruptions is more important than their frequency. These interruptions were usually made by the trial judge on his own intitiative without any objection being made by the Commonwealth's Attorney. He admonished defense counsel because of the relevance, form or the leading nature of defense counsel's questions. Several of his interruptions directed defense counsel to stop asking leading questions during cross-examination when he was entitled to ask such questions. Also without objection from the Commonwealth's Attorney, he interrupted witnesses responding to defense counsel's questions because they were not being responsive to the questions. He admonished defense counsel in the presence of the jury for failing to acknowledge the trial judge when he spoke to him. He told defense counsel what questions to ask defense witnesses. He told defense counsel that the jury did not need to hear certain evidence, and in the presence of the jury told defense counsel that he was "just asking questions that amount to nothing."

 In Virginia the distinctions between the role of judge and jury are well established:

[I]n Virginia, it is the duty of the trial judge to interpret and to apply the law; but it is the peculiar duty of the jury to evaluate the evidence. A judge must not express or indicate, by word or deed, an opinion as to the credibility of a witness or as to the weight or quality of the evidence. Any question or act of the judge which may have a tendency to indicate his thought or belief with respect to the character of the evidence is improper, and should be avoided. The impartiality of the judge must be preserved in form and in fact. . . .

*Jones v. Town of LaCrosse*, 180 Va. 406, 410, 23 S.E.2d 142, 144 (1942); *see also Spence v. Miller*, 197 Va. 477, 482, 90 S.E.2d 131, 134-35 (1955). A reading of this record suggests that the impartiality of the trial judge was not so preserved. Since we cannot say that the trial judge's conduct did not prejudice the defendant before the jury, we must also reverse for this reason and remand for a new trial. *See Spence v. Miller*, 197 Va. at 482, 90 S.E.2d at 134-35.

## SUFFICIENCY OF THE EVIDENCE

The indictment, supplemented by a bill of particulars, charged that the defendant, "within the last past sixty days prior to April 23, 1984," conspired with Floyd Donny Langhorne and others, who, according to a bill of particulars, included Floyd Tyler Langhorne, James Edward Thomas, Leslie Brake, an unidentified female known as "Tanka," James E. Smith and other unknown persons, to sell and distribute heroin. The appellant contends that the Commonwealth's evidence revealed only a sale of heroin from Brown to Floyd Donny Langhorne but did not show any conspiracy to sell heroin which involved the other co-conspirators.

■ This contention fails to consider that the agreement entered into between Brown and Langhorne for the sale of heroin was a conspiracy to sell heroin. A conspiracy is "an agreement between two or more persons by some concerted action to commit an offense." *Cartwright v. Commonwealth*, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982) (quoting *Falden v. Commonwealth*, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). Therefore, when Brown agreed to sell the heroin to Langhorne and received payment in advance, the conspiracy was complete.

The evidence supported the jury's conclusion that Brown conspired with Langhorne to sell heroin. The failure of the evidence to also support the conclusion that he conspired with "others" and further conspired to "distribute heroin" does not alter or invalidate the jury's verdict. These allegations were surplusage. *See Spear v. Commonwealth*, 221 Va. 450, 454, 270 S.E.2d 737, 740 (1980).

In responding to the appellant, the Attorney General interprets the appellant's argument as an assertion of a merger of offenses. However, the appellant in his reply brief denies that this is his argument; therefore, it is not necessary that we address this issue.

## COMMONWEALTH'S REBUTTAL

The appellant contends that the trial court erred in allowing the Commonwealth to offer rebuttal evidence demonstrating the bias of a defense witness. The appellant contends that the Commonwealth's rebuttal evidence did not show bias but was impeachment on a collateral matter elicited from the defense witness

by the Commonwealth's Attorney on cross-examination. We disagree.

The defense witness was Aaron Langhorne, a younger brother of Floyd Donny Langhorne who testified against Brown. He testified that his brother had told him prior to trial that even though the heroin had not "come from Brown . . . he was just going ahead to testify and lie because he had to do something to get out . . . . And they had promised him that he would receive a reduced sentence . . . ."

On cross-examination the Commonwealth's Attorney asked Aaron Langhorne if he knew Brown, and he responded: "I've seen him a few times." He also inquired if Aaron Langhorne had been to Brown's "place on Harvard Street," and he answered: "I'm not familiar with Harvard Street."

In rebuttal the Commonwealth introduced evidence showing that Aaron Langhorne had been to Brown's apartment on Harvard Street in Washington, D.C. Testimony by an undercover detective who had seen Aaron Langhorne at this location, along with photographs that he had taken of Aaron Langhorne at that time were introduced. Also, evidence of a telephone conversation between Aaron Langhorne speaking from a telephone located in Brown's apartment on Harvard Street to his brother was admitted.

This evidence tended to show the extent and nature of the relationship between Aaron Langhorne and Brown. It was admissible to show Aaron Langhorne's bias toward Brown and was material to the jury's determination of Aaron Langhorne's credibility.

### EVIDENCE OF HEROIN USE

Over defense counsel's objection testimony was introduced describing how heroin is used and distributed. The appellant contends that this was not material and was prejudicial. This evidence did not describe "extreme horrors which may result from the use of illegal substances" but was innocuous and, if error, harmless. *Compare Smith v. Commonwealth*, 223 Va. 721, 724, 292 S.E.2d 362, 364 (1982) *with Lane v. Commonwealth*, 223 Va. 713, 717-18, 292 S.E.2d 358, 361 (1982).

For the foregoing reasons the judgment of conviction is reversed and this proceeding is remanded for a new trial.

*Reversed and remanded.*

Duff, J., and Moon, J., concurred.