**Alexandria**

JAMES WELTON STULTZ

v.

COMMONWEALTH OF VIRGINIA

No. 1161-86-4

Decided June 7, 1988

COUNSEL

Bruce C. Morris, for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

DUFF, J. — James Welton Stultz was indicted on the felony charge of conspiracy with Ernest Milton James "to receive a valuable thing for procuring another for the purpose of causing such person to engage in unlawful sexual intercourse or any act in violation of Code § 18.2-361 of the Code of Virginia," in violation of Code § 18.2-22 and 18.2-356. He was convicted in a jury trial of the misdemeanor of attempting to aid prostitution. His appeal presents two issues for our consideration: (1) whether the trial court properly admitted statements of an alleged co-conspirator; and (2) whether the trial court erred in refusing to admit statements made by the alleged co-conspirator after his arrest. Upon consideration of the record, the arguments and authorities presented, we have concluded that the conviction should be affirmed.

When viewed in the light most favorable to the Commonwealth, the evidence taken at trial relevant to the issues presented is as follows: In 1983 or 1984, James W. Stultz approached his wife's niece, Patty Robinette, and told her that he had a friend who would give her a job if she was interested. She accompanied Stultz to an office located on James Madison University campus, where he introduced her to Ernest James. Stultz introduced James as

"the professor." James offered Robinette the job of entertaining men from out of town in motel rooms of her choosing. She declined the offer.

Later, in 1985 and 1986, Stultz again spoke to Robinette about "the professor," and he was again refused. In June 1986, Robinette met with the Harrisonburg police regarding an investigation of Stultz and Ernest James. She agreed to cooperate with the police in their continuing investigation. An undercover police sergeant using the name "Karen Bertin" was brought in to assist in the investigation. The parties agreed that Robinette and Bertin would talk with the defendant and James and the conversations would be electronically recorded.

On June 23, 1986, Robinette and Bertin went to the Ray Carr Tire Co., where both Stultz and James worked. The two girls met Stultz and informed him that they were in need of some money and were looking for work. Stultz told them the company had no openings other than those involving "dirty work around tires and rubber." Robinette then inquired, "Well, how about Mr. Professor?" Stultz replied that the professor might be interested and told Bertin that "this is not exactly a job." He then told Robinette to call him later after he had discussed their interest in employment with James.

On June 24, 1986, Robinette telephoned Stultz, who put her in contact with Ernest James. Robinette and James agreed to meet the next day in a parking lot. Both of these telephone conversations were tape recorded. Under police surveillance, Robinette and Bertin met Ernest James at the designated parking lot. The undercover officer wore a body transmitter on her person which permitted the surveillance officer to hear the conversations. Robinette carried a tape recorder in her purse. From the parking lot, James and the women went to an apartment in Harrisonburg. The conversations at all times were transmitted and recorded.

Inside the apartment, James discussed the plan for the women to entertain business customers from out of town. James asked them how they felt about anal and oral sex. He also discussed fees, and the three decided on a minimum rate of fifty dollars. James said he was interested in a good time and in business and requested that the women pass on business and community information which they overheard from the customers. He indicated

that he wanted to have sex with the women before recommending them to customers and offered them forty dollars apiece. As preparations were undertaken to engage in this activity, police officers entered the premises and placed James under arrest. Following a taped interrogation of James, Stultz was arrested at the Ray Carr Tire Co. Upon questioning, Stultz told a detective that he had arranged meetings or introduced women to James on three occasions.

## I.

Stultz first contends that the trial court erred in admitting into evidence the taped conversations between James and Robinette and Bertin. He argues that any statements made by James were hearsay and could not be admitted until the Commonwealth had presented sufficient evidence to establish a *prima facie* case of conspiracy. The Commonwealth contends, however, that the circumstantial evidence introduced prior to the tender of the recorded statements established a *prima facie* case of conspiracy. It further argues that many of the statements made by James were not hearsay, i.e., were not offered for the truth of the matters asserted therein.[1] We agree with both of these contentions.

"The acts and declarations of any of the conspirators, in furtherance of the object of the conspiracy, are admissible evidence against each and all of them, though such acts and declarations were not done and said in the presence of all." *Sands v. Commonwealth*, 62 Va. (21 Gratt.) 871, 895 (1872), quoted in *Amato v. Commonwealth*, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987). Defendant correctly contends that a co-conspirator's statements out of the defendant's presence cannot be used to prove the conspiracy but may be admitted if a *prima facie* case has been established by other evidence. *Floyd v. Commonwealth*, 219 Va. 575, 581-82, 249 S.E.2d 171, 175 (1978) (citing *Anderson v. Commonwealth*, 215 Va. 21, 24, 205 S.E.2d 393, 395 (1974)). However, the fact of a conspiracy, like any other fact, may be

---

[1] For example, James told "Bertin" and Robinette that some customers liked two or three women working together. He told them if they were arrested or became pregnant, they would be on their own. Certainly these statements were not offered to prove what customers liked or what would happen in case of arrest or pregnancy. *See Church v. Commonwealth*, 230 Va. 208, 212, 335 S.E.2d 823, 825-26 (1985); *Eckhart v. Commonwealth*, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981).

established by circumstantial evidence. In *Floyd*, the Supreme Court noted that because of the very nature of conspiracy, "it often may be established only by indirect and circumstantial evidence." *Id.* at 580, 249 S.E. 2d at 174. Moreover, a formal agreement need not be shown; a conspiracy "can be inferred from the overt conduct of the parties." *Id.* at 581, 249 S.E.2d at 174 (quoting *United States v. Harris*, 433 F.2d 333, 335 (4th Cir. 1970)).

The narrow issue before the trial court was whether the circumstantial evidence would permit a reasonable inference that Stultz and James had an agreement to cooperate in providing girls to entertain business customers. The record showed that both of the men worked at the tire company; that in 1983, it was the defendant who approached Robinette regarding employment with the "professor;" in both 1985 and 1986, the defendant advised Robinette that the "professor" had inquired as to her continued interest in employment; and in 1986 Stultz advised Bertin that working for the professor "was not exactly a job." We hold that the totality of these circumstances permits a reasonable inference that Stultz and James had an agreement to further prostitution and that Stultz was fully aware of the nature of the "work" to be offered the girls by James. The jury further could reasonably infer that both men would benefit from the prostitution. As trier of fact, the jury was not required to draw these inferences. However, the test is whether it would have been permissible under this evidence for the jury to have drawn them. We believe it would have been and accordingly, the trial court was correct in admitting the tape recordings of the conversations between James, Bertin, and Robinette.

## II.

Stultz next challenges the ruling of the trial court in denying admissibility of certain post-arrest statements made by James which Stultz contends were exculpatory. This contention, however, was not properly preserved for appeal. During the cross-examination of Detective McDorman, defendant sought to introduce certain post-arrest statements of co-conspirator Ernest James. The Commonwealth objected to the introduction of this evidence. The defendant asked the court whether he properly could proffer the statement he sought to introduce. The court called a recess to examine the law and upon return ruled against defendant, finding

that James could no longer be the agent of the defendant since the conspiracy had terminated. The court added that a proffer of the evidence of Mr. James' statement would not be necessary. The jury was then brought back into the courtroom and the trial proceeded. Defendant did not proffer James' statement, nor did he make it part of the record.

We are satisfied from the record that the court's declination of the necessity of a proffer referred only to the fact that the Judge did not feel the need of the proffer in order to properly rule on the admissibility of the statements. The trial court did not prohibit Stultz from making a proffer for the purpose of completing the record for appeal. This was not done and we have no way of knowing the contents of the statements.

In *Whittaker v. Commonwealth*, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977), the Supreme Court held that "when testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record contains a proper proffer." *See also Wyche v. Commonwealth*, 218 Va. 839, 842, 241 S.E.2d 772, 774 (1978).

Finding no reversible error in the record, we affirm the conviction.

*Affirmed.*

Keenan, J., and Moon, J., concurred.