COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Bray and Senior Judge Duff
Argued at Alexandria, Virginia


PRESTON MILLS, JR.

MEMORANDUM OPINION[*] BY
v.   Record No. 1758-95-4        CHIEF JUDGE NORMAN K. MOON
                                       MAY 28, 1996
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
James W. Haley, Jr., Judge

Bradford F. Johnson (Johnson & Walker, P.C.,
on brief), for appellant.

Michael T. Judge, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


     Preston Mills, Jr. appeals from his conviction of
distribution of cocaine.  He claims that hearsay evidence was
improperly admitted against him, and that the evidence was
insufficient to sustain his conviction.  We affirm the
conviction.

     On February 10, 1994, Charles Doss was working as an
undercover officer for the Stafford County Sheriff's Department.
 He called Sam Brown, whom he knew by voice from prior meetings,
to discuss purchasing half an ounce of crack cocaine.  Over
defense counsel's objection, Doss testified that Brown had a
source in Fredericksburg who could get cocaine for Doss and that
the source's name was "Rabbit."  After a series of calls, Doss

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

and Brown agreed that they would meet at a McDonalds restaurant and then drive to a gas station, where Brown would make the buy for Doss. The deal was set up in that manner because Brown's source did not want to meet face to face with Doss.

Brown and Doss met at the McDonalds at about 6:30 p.m. Brown's girlfriend, Gina Rowe, drove him to the McDonalds. Brown then switched to Doss' vehicle and Rowe drove alone to the gas station, where she was to serve as a look-out. Doss had informed Detective Ann Jett that the deal was to take place at the gas station, and she parked nearby and observed the other cars arriving.

During the negotiations by telephone, Doss had agreed to pay $500 for eleven fifty dollar "rocks" of crack cocaine. On the way to the gas station, Doss agreed to pay Brown thirty dollars for his help in setting up the deal. Brown also asked for some of the cocaine, and when Doss refused he suggested that he could just take some of the cocaine before giving it to Doss. Doss warned him not to do so.

The first car to arrive at the gas station was a white Cadillac. Doss' car arrived next, and at Brown's direction Doss parked facing the Cadillac. Rowe arrived last, and parked behind Doss. It had begun to sleet, and visibility was poor. The Cadillac's lights were on, and Doss testified that he could see two individuals in the Cadillac other than Brown, but could not see their faces due to the glare of the headlights. Brown

entered the Cadillac, stayed a minute or two and returned to Doss' car with eleven rocks of cocaine. Brown then left with Rowe. Doss testified that he did not know whether Brown had cocaine with him before they arrived at the gas station.

Rowe testified concerning her involvement in the transaction. She became aware of the transaction through the telephone conversations she heard between Brown and Doss, and Brown and "Rabbit." Rowe identified Preston Mills as "Rabbit," and stated that she and Brown "dealt with him all the time." Rowe also stated that as the Cadillac was leaving the gas station, Mills waved to her from the passenger seat. Brown told Rowe that he had "pinched" some of Doss' crack and had taken some cocaine that Rabbit dropped on the floor. Rowe and Brown smoked the stolen crack on the way home. Rowe testified that prior to the transaction, Brown had no drugs with him that she knew of.

Doss had not met Mills prior to this transaction, but did meet him on a subsequent occasion. Doss was with Brown and Rowe, and Brown introduced Mills to Doss as "Rabbit."

Mills argues first that Brown's statements to Doss, "Rabbit," and Rowe were inadmissible hearsay. The Commonwealth contends that the statements were admissible as declarations by a co-conspirator. When the Commonwealth has established a prima facie case that a conspiracy has been formed, statements made by co-conspirators are admissible against the other conspirators. Rabeiro v. Commonwealth, 10 Va. App. 61, 65, 389 S.E.2d 731, 732

(1990). The trial need not be on a charge of conspiracy; it is sufficient that the crime charged was committed pursuant to the conspiracy. See Floyd v. Commonwealth, 219 Va. 575, 581-82, 249 S.E.2d 171, 175 (1978).

The prima facie case of conspiracy must be established by evidence independent of the hearsay. Rabeiro, 10 Va. App. at 64, 389 S.E.2d at 732. The existence of a conspiracy, like any other fact, may be established by circumstantial evidence. Stultz v. Commonwealth, 6 Va. App. 439, 443, 369 S.E.2d 215, 217 (1988). In reviewing whether evidence was sufficient to establish the existence of a conspiracy, we consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

The hearsay rule excludes only those statements offered to prove the truth of the matter asserted. Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981). Brown's statements to "Rabbit" on the telephone were not offered for their truth. It is irrelevant whether Brown actually intended to meet "Rabbit" at the gas station and pay him for cocaine. His statements to that effect were relevant only to explain Rabbit's presence at the gas station at the time specified by Brown. Statements offered to show their effect on the listener are admissible for that purpose. See Upchurch v. Commonwealth, 220 Va. 408, 409-10, 258 S.E.2d 506, 507-08 (1979); Hamm v. Commonwealth, 16 Va. App.

150, 156, 428 S.E.2d 517, 521 (1993). Moreover, statements that have legal consequences, such as to establish a contract, are not hearsay when offered to prove the existence of the contractual relationship. Id. at 156, 428 S.E.2d at 521. Therefore, Brown's statements to "Rabbit," making an "offer" of a drug deal, were admissible without regard to the co-conspirator exception to the hearsay rule.

Evidence independent of the hearsay, including Brown's statements to Rabbit, showed that in response to Doss' request for a drug deal, Brown contacted an individual named "Rabbit" to offer such a deal. After Brown's conversations with Rabbit, Doss and Brown drove to the location proposed by Brown, where Mills was waiting. Brown joined Mills in the Cadillac and returned with eleven rocks of cocaine. Rowe, who was involved in drug transactions with Brown, testified that she and Brown "dealt with [Rabbit] all the time." Both Rowe and Doss confirmed that Mills and Rabbit were the same person. This evidence, viewed in the light most favorable to the Commonwealth, established a prima facie case of a conspiracy between Brown and Mills. Therefore, the testimony describing Brown's conversations with Doss and Rowe was admissible as the declarations of a co-conspirator.

Mills also argues that the evidence was insufficient to convict him of distribution. On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). In circumstantial cases the Commonwealth must exclude every reasonable hypothesis of innocence that flows from the evidence, but not those hypotheses that do not. See Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).

Viewed in the light most favorable to the Commonwealth, the evidence showed that Officer Doss' contact, Sam Brown, set up a drug transaction with Preston Mills, known as "Rabbit." The parties met at the time and place agreed, Brown got into the car with Mills, and emerged with the cocaine. Granting the Commonwealth the benefit of all reasonable inferences, this evidence is sufficient to convict Mills of distribution of cocaine.

Mills argues that the Commonwealth did not exclude every reasonable hypothesis of innocence because there was another individual in the Cadillac, and because Brown could have brought the cocaine to the gas station himself. As to the first argument, all evidence points to Mills, not the unidentified driver, as the man with the cocaine. Brown made the arrangements with "Rabbit" and then met him at the gas station as planned. Brown bragged to his girlfriend that he had stolen some cocaine that Rabbit dropped on the floor of the car. The Commonwealth's evidence excluded the hypothesis that the driver sold the cocaine to Brown.

As to the second argument, Gina Rowe testified that Brown had his "stem" (pipe) with him, but no cocaine.  As soon as Brown stole cocaine from Doss and Rabbit, he and Rowe smoked it.  This evidence, combined with Rowe's testimony that Brown set up a drug transaction with Rabbit, is sufficient to exclude the hypothesis that Brown actually provided the cocaine.  For these reasons, we affirm the conviction.

<u>Affirmed.</u>