COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


ANTONIO EUGENE DAVIS

MEMORANDUM OPINION*
v.          Record No. 2244-96-1      BY JUDGE JOSEPH E. BAKER
                                     SEPTEMBER 30, 1997
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
James M. Lumpkin, Judge Designate

David H. Moyer (Bashara & Hubbard, on brief),
for appellant.

Kimberley A. Whittle, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Antonio Eugene Davis (appellant) appeals from his jury trial convictions for second degree murder, attempted robbery, and conspiracy to commit robbery, that were approved by the Circuit Court of the City of Norfolk (trial court). Appellant asserts that the evidence is insufficient to support the convictions. Finding no error, we affirm the judgment.

Upon familiar principles, we review the evidence in the light most favorable to the Commonwealth, granting to it all inferences fairly deducible therefrom. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Viewed accordingly, the record discloses that on July 16, 1993, appellant, Reynaurd Lewis, and an unidentified third man picked

*Pursuant to Code § 17-116.010 this opinion is not designated for publication.

up Anthony Williams by automobile. Knowing that Timothy Hutchinson[1] (the victim) had some money, they drove to his apartment to "get paid," a street term that means taking money by force, if necessary. Upon arrival at the victim's apartment, Williams was the first to approach the victim's door. Williams testified that he knew appellant and Lewis were planning to take the victim's money because "[t]hat's what they were saying."

Appellant and Lewis followed Williams, and when the victim opened the door, Williams was "shoved" into the apartment by one of them. Appellant and Lewis were behind Williams when he was "shoved." Inside, Lewis demanded to know where the money was and began to argue with the victim. The two men exchanged gunshots. Williams hid in a corner near the kitchen, but after the shootings, he saw the victim crawling on the floor. Lewis had left the scene.

Cheryl Hutchinson, the victim's wife, arrived home at her apartment between 12:30 and 1:00 p.m. to find her husband lying on their living room floor in a pool of blood. Two handguns were near the victim's semi-conscious body. The rescue squad took him from the scene, but he died of his wounds at Norfolk General Hospital.

Homicide detectives found a 9 millimeter handgun, a .380 handgun, a number of shell casings, and spent bullets at the

---

[1]Hutchinson was the victim of the murder, attempted robbery, and conspiracy to commit robbery.

2

apartment.  Forensics examiner John Ward determined the victim had been shot multiple times and at least once at close range. Ward also determined that of the sixteen 9 millimeter shell casings all had been fired from the same weapon; however, that weapon was neither of the handguns recovered at the scene.  Two 9 millimeter bullets were determined to have been fired from the same gun as the shells.  Ward examined the .380 shell casings but could not determine whether they had been fired from the .380 weapon found at the scene.

Detective Shaun Squyres responded to a police dispatcher report that a gunshot victim had arrived for treatment at Norfolk General Hospital.  Squyres believed that the gunshot victim may have been involved in the homicide at the Hutchinson apartment. Squyres interviewed the gunshot victim, Reynaurd Lewis, at the hospital and subsequently took him to police headquarters for further questioning.  Appellant arrived at the hospital to talk to Lewis just as Squyres was escorting Lewis out the back door.

Within a few days of the shooting, Squyres interviewed Williams.  Williams admitted that the group had driven to the victim's apartment planning to rob him.  Although Williams testified at appellant's preliminary hearing that the group had approached the victim to sell him a gun, at trial Williams testified that he had made that statement only because of threats against him and his family.

Appellant asserts that the Commonwealth failed to prove that

3

he was a party to a conspiracy to rob the victim and that the evidence is insufficient to support his convictions for second degree murder and attempted robbery.

"A conspiracy is 'an agreement between two or more persons by some concerted action to commit an offense.'" Brown v. Commonwealth, 3 Va. App. 101, 107, 348 S.E.2d 408, 411 (1986) (citations omitted); see also Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993); Amato v. Commonwealth, 3 Va. App. 544, 551, 352 S.E.2d 4, 8 (1987). "Conspiracy requires '(1) an agreement between two or more persons, which constitutes the act; and (2) an intent to thereby achieve a certain objective which, under the common law definition, is the doing of either an unlawful act or a lawful act by unlawful means.'" Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 48 (1991) (quoting W. LaFave & A. Scott, Criminal Law § 461 (1972)). "The agreement is the essence of the conspiracy offense," Zuniga v. Commonwealth, 7 Va. App. 523, 527-28, 375 S.E.2d 381, 384 (1988), and the "conspiracy is committed when the agreement to commit the offense is complete regardless whether any overt act in furtherance of commission of the substantive offense is initiated." Ramsey v. Commonwealth, 2 Va. App. 265, 270, 343 S.E.2d 465, 469 (1986). The conspiracy does not end "until the spoils are divided and the co-conspirators have 'gone their separate ways.'" Stumpf v. Commonwealth, 8 Va. App. 200, 206, 379 S.E.2d 480, 484 (1989) (quoting Berger v. Commonwealth,

4

217 Va. 332, 335, 228 S.E.2d 559, 561 (1976)).  "[T]he participants may be found guilty of conspiracy even though the planned crime was not fully consummated."  Amato, 3 Va. App. at 553, 352 S.E.2d at 9.

> [T]he fact of a conspiracy, like any other fact, may be established by circumstantial evidence. . . . [B]ecause of the very nature of conspiracy, "it often may be established only by indirect and circumstantial evidence."  Moreover, a formal agreement need not be shown; a conspiracy "can be inferred from the overt conduct of the parties."

Stultz v. Commonwealth, 6 Va. App. 439, 442-43, 369 S.E.2d 215, 217 (1988) (quoting Floyd v. Commonwealth, 219 Va. 575, 580, 581, 249 S.E.2d 171, 174 (1978) (citation omitted)).

Important to our finding is the legal principle that "[e]ach member of a conspiracy is responsible for the acts of the others in furtherance of the conspiracy, and all conspirators, even those without knowledge of the particular act, may be tried where any of those acts are performed."  Henry v. Commonwealth, 2 Va. App. 194, 198, 342 S.E.2d 655, 657 (1986).  Here, the direct and circumstantial evidence discloses that, pursuant to a plan and agreement, appellant and Lewis drove to the victim's apartment to forcibly take the victim's money.  The record clearly shows that the victim's death occurred as a result of the act of one of the participants of the conspiracy while an attempt was being made to carry out the robbery upon which appellant and Lewis had agreed.  The fact that appellant was not conclusively shown to have fired the shot that killed the victim does not, under these

5

circumstances, exonerate him from the charges for which he stands convicted.

Upon the facts shown, we hold that the trial court did not err when it refused to strike the evidence and dismiss the murder, attempted robbery, and conspiracy charges.

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>