PRESENT: All the Justices

JARVON LAVELL WALKER

                                        OPINION BY
v.    Record No. 140747        JUSTICE WILLIAM C. MIMS
                                        April 16, 2015
COMMONWEALTH OF VIRGINIA


                FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we consider whether four separate charges

of selling, giving, or distributing a controlled substance were

permissibly joined for trial under Rules 3A:6(b) and 3A:10(c).

     I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     Derrick Walker was an informant working with the Southside

Drug Task Force.  He identified Jarvon Lavell Walker as a drug

dealer.[1]  Jarvon was previously known to Derrick but they had

not spoken for some time.

     On April 11, 2012 Derrick contacted Jarvon and arranged to

buy a gram of crack cocaine.  At Jarvon's suggestion, Derrick

met him at a store in South Hill and bought 0.961 gram of crack

cocaine for $50.

     On April 13, 2012 Derrick again contacted Jarvon to buy

crack cocaine.  Jarvon again suggested they meet at the same

store where he had sold Derrick crack cocaine two days earlier.

He later changed the location to a trailer park in South Hill.

---

     [1] Derrick and Jarvon are not related.

1

Derrick met Jarvon there and bought 0.845 gram of crack cocaine for $50.

On April 19, 2012 Derrick again contacted Jarvon to buy crack cocaine. Jarvon suggested they meet at a second trailer park in South Hill. Derrick met Jarvon there and bought 0.603 gram of crack cocaine for $70.

On April 24, 2012 Derrick again contacted Jarvon to buy crack cocaine. Jarvon suggested they meet at a trailer park in Mecklenburg County. Derrick met Jarvon there and bought 0.773 gram of crack cocaine for $70.

Each of the four transactions was overseen and recorded by task force personnel. Subsequent analysis by the Department of Forensic Sciences confirmed the quantity and nature of the substances Derrick had bought in each of the transactions.

A grand jury later indicted Jarvon on four separate counts of selling, giving, or distributing a Schedule I or II controlled substance, in violation of Code § 18.2-248, following two or more prior convictions for substantially similar offenses. He thereafter moved to sever the indictments and be tried in four separate jury trials, arguing that the charged offenses were not part of a common scheme or plan. He also argued that he would be prejudiced if all four charges were tried in a single proceeding because a jury might convict

him on all four even if only one was proved.  After a hearing, the circuit court denied the motion.

At the subsequent trial, the jury found Jarvon guilty on all four counts.  The court sentenced him to six years' imprisonment on each count and three years' post-release supervision under Code § 19.2-295.2.

In an appeal to the Court of Appeals, Jarvon again argued that the four offenses were not part of a common scheme or plan.  The Court of Appeals determined that the offenses did constitute a common plan within the meaning of Rule 3A:6(b).  The court noted that "the term 'common plan' described crimes that are related to one another for the purpose of accomplishing a particular goal."  Walker v. Commonwealth, Record No. 1051-13-2, slip op. at 6 (Mar. 25, 2014) (quoting Scott v. Commonwealth, 274 Va. 636, 646, 651 S.E.2d 630, 635 (2007)).  It observed that each sale followed a similar pattern:  Jarvon waited for Derrick to contact him about buying crack cocaine; Jarvon set a location for the sale; each sale was for approximately one gram; and all sales took place in or near South Hill in Mecklenburg County.  Id.

The Court of Appeals also noted that although expert opinion testimony established the local market price for crack cocaine was $100 per gram, Jarvon only charged $50 for 0.961

3

gram in the first sale.[2]  From this evidence, the Court of

Appeals inferred that Jarvon had provided a discount price to

"create a return customer," id. at 6, which was "a 'plan that

tied the offenses together and demonstrated that the object of

each offense was to contribute to the achievement of a goal

that was not obtainable by the commission of any of the

individual offenses.'"  Id. at 8-9 (quoting Spence v.

Commonwealth, 12 Va. App. 1040, 1044, 407 S.E.2d 916, 918

(1991) (internal alteration omitted)).  Accordingly, it

concluded that joinder was permissible under Rule 3A:6(b).

The Court of Appeals then determined that justice did not

require severing the charges for the purposes of Rule 3A:10(c).

It opined that the evidence of multiple sales was admissible

because it helped establish both that Jarvon had the requisite

intent to sell, give, or distribute the controlled substance

and that he knew the nature and character of the substance he

was selling.  The court also opined that the probative value of

admitting such evidence outweighed any prejudicial effect.

Finally, it noted both that much of the evidence would have

been the same if the circuit court had ordered separate trials

and that the decision to join the charges served interests of

_____

[2] Jarvon also sold 0.845 gram for $50 in the second sale,
but trial testimony established that its quality was poor.
Quality improved for the third and fourth sales and the price
then was consistent with market price.  Id. at 6-7.

4

judicial economy.  Id. at 9-11.  Accordingly, it concluded that the circuit court did not abuse its discretion by permitting all four charges to be tried together.

We awarded Walker this appeal.

## II.  ANALYSIS

In his first assignment of error, Walker asserts that the Court of Appeals erred by determining that the four offenses constituted a common plan for the purposes of Rule 3A:6(b).  Citing Spence, he argues that separate sales of a controlled substance on different occasions are insufficient to constitute a common scheme or plan.

The circuit court's decision to join offenses for trial is reviewed for abuse of discretion.  Scott, 274 Va. at 644, 651 S.E.2d at 634.  However, interpretations of the Rules of this Court by the Court of Appeals, including the meaning of the term "common plan" as used in Rule 3A:6(b), are questions of law we review de novo.  LaCava v. Commonwealth, 283 Va. 465, 471, 722 S.E.2d 838, 840 (2012).[3]

---

[3] Rule 3A:6(b) permits joinder of offenses that are based on (1) "the same act or transaction," (2) multiple acts or transactions "that are connected", or (3) multiple acts that "constitute parts of a common scheme or plan."  In Scott, we determined that "common scheme" and "common plan" are separate and distinct, but not mutually exclusive.  274 Va. at 645-46, 651 S.E.2d at 635.  This appeal is limited solely to considering joinder of offenses based on common plan.

5

In Spence, the defendant sold cocaine to an undercover narcotics investigator in four transactions between February 3 and May 10, 1989, in or near Whitesville in Accomack County. 12 Va. App. at 1041-42, 407 S.E.2d at 916-917. The Court of Appeals considered whether the four charges were properly joined for trial under Rule 3A:6(b). It considered each of the three prongs of Rule 3A:6(b). It concluded that the charges fulfilled none of them. Id. at 1042-45, 407 S.E.2d at 917-18.

Specifically addressing the common scheme or plan prong, the Court of Appeals noted that "separate sales of a controlled substance by the same individual on different occasions do not constitute a common scheme or plan." Id. at 1044, 40 S.E.2d at 918. Rather,

> a common scheme or plan is present only if the "relationship among offenses is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not obtainable by the commission of any of the individual offenses."

Id. (quoting Godwin v. Commonwealth, 6 Va. App. 118, 122, 367 S.E.2d 520, 522 (1988) (internal alteration omitted)).

The Court of Appeals concluded that

> [n]othing inherent in any of the four crimes herein charged would separate them from numerous offenses of possession and distribution of drugs that happen every day. There is no evidence of a plan tying

6

> these four drug sales together or showing
> that each offense was intended to assist in
> accomplishing a goal other than that
> achieved by each individual offense. The
> four offenses merely show that Spence has
> the propensity to commit the crime and this
> inference has been held to be error because
> it reverses the presumption of innocence.
> Lewis v. Commonwealth, 225 Va. 497, 502,
> 303 S.E.2d 890, 893 (1983).

Id. at 1044-45, 407 S.E.2d at 918.

The only material distinction between Spence and this case is that the four transactions took place over a span of 13 weeks in Spence and over a span of 13 days here. While we indicated in Satcher v. Commonwealth, 244 Va. 220, 299, 421 S.E.2d 821, 827 (1992), that offenses may be considered parts of a common scheme or plan when they are "closely connected in time, place, and means of commission," the two crimes charged in that case occurred "within a few yards and about one-half hour of each other," and shared the same modus operandi.

We are not persuaded that the general vicinity of South Hill and a span of 13 days sufficiently connects the four transactions here any more than the general vicinity of Whitesville and a span of 13 weeks did in Spence. Similarly, we are not persuaded that the pattern of the transactions identified by the Court of Appeals in this case was sufficiently specific to establish an unusual and unifying modus operandi. Cf. Yellardy v. Commonwealth, 38 Va. App. 19,

7

22-25, 561 S.E.2d 739, 741-42 (2002) (affirming the conviction in a single trial of a defendant charged with two robberies occurring four days apart in the same park where each victim was an unaccompanied male threatened with a rock and subsequently accused by the defendant of having made a sexual proposition).

We likewise are not persuaded that the evidence established that Jarvon had a particular "goal not obtainable by the commission of any of the individual offenses." Spence, 12 Va. App. at 1044, 407 S.E.2d at 918 (internal quotation marks omitted). The object of selling drugs for money is to make money selling drugs. The seller's goal is to make a profit. Return customers are more profitable: the seller incurs lower operating costs selling to them than if he or she must spend the time and effort to attract new ones. Therefore, the cultivation of return customers is intrinsic to the goal of profiting from the sale of drugs.

The Court of Appeals also sought to distinguish Spence on the ground that it was decided before our 2007 decision in Scott. In that case we defined the term "common scheme or plan" as used in Rule 3A:6(b) for the first time. 274 Va. at 644, 651 S.E.2d at 635. The Court of Appeals determined that earlier cases, including Spence, were decided using an analysis blending common scheme and common plan that Scott made obsolete

8

and they therefore were no longer useful in ascertaining whether offenses formed "a common plan exclusive of a common scheme."  Walker, slip op. at 8.  We disagree.

In Scott, we held that "the term 'common plan' describes crimes that are related to one another for the purpose of accomplishing a particular goal."  274 Va. at 646, 651 S.E.2d at 635.  This definition echoes rather than contradicts the language in Spence that offenses constituting part of a common plan must "contribute to the achievement of a goal not obtainable by the commission of any of the individual offenses."  12 Va. App. at 1044, 407 S.E.2d at 918 (internal quotation marks omitted).  Accordingly, Scott does not overrule or limit Spence.  The similarity of these statements encourages rather than discourages reaching similar results on the similar facts present in both cases.

Nevertheless, we appreciate that the term "common plan" is amorphous and may merit additional clarification.  But see United States v. Jawara, 474 F.3d 565, 574 (9th Cir. 2007) (opining that "common scheme" and "common plan" are "self defining").  We perceive the similarities between Rule 3A:6(b) and Federal Rule of Criminal Procedure 8(a), which permits joinder of multiple offenses when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or

9

plan."  Federal "courts generally permit joinder [under the federal rule's common scheme or plan test] where the counts grow out of related transactions.  Stated another way, [federal courts] ask whether commission of one of the offenses either depended upon or necessarily led to the commission of the other . . . ."  Jawara, 474 F.3d at 574 (internal quotation marks, citations, and alterations omitted); see also United States v. Dominguez, 226 F.3d 1235, 1238-39 (11th Cir. 2000) (approving joinder of offenses when proof of one provides the motive and necessity for the other).

Although the joinder analysis is different from the analysis of whether evidence of other crimes, wrongs, or acts is admissible under Rule 2:404(b), the principles supporting the evidentiary analysis helpfully illustrate our joinder analysis in this case.  In the Rule 2:404(b) context, a common plan includes "'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.'" McWhorter v. Commonwealth, 191 Va. 857, 870-71, 63 S.E.2d 20, 26 (1951) (quoting 2 Wigmore on Evidence § 304, at 202 (3d ed. 1940)).

Thus, a "common plan" "connotes a series of acts done with a relatively specific goal or outcome in mind."  David P. Leonard, The New Wigmore: A Treatise on Evidence § 9.2.2, at

572 (2009).[4]  This goal or outcome exists when the constituent offenses occur sequentially or interdependently to advance some common, extrinsic objective.  For example, a defendant may break into a bank president's home, steal the keys to the bank, and then burgle it.  All of the associated offenses are committed sequentially to further the principal objective of taking the money from the bank.  Id. § 9.2.1(a), at 562.  Similarly, a defendant may be a partner in a business and murder the other partners to acquire control of it.  Each murder is a separate prerequisite to acquiring control of the business, so each offense is an act in furtherance of that objective.  Id. § 9.2.1(b), at 567-68.

By contrast, this case has none of the features of a common plan because there is no evidence from which to infer "a relatively specific goal or outcome."  Id. § 9.2.2, at 572.  The four individual drug transactions are not "related to one another for the purpose of accomplishing a particular goal."  Scott, 274 Va. at 646, 651 S.E.2d at 635.  The key factor, as

---

[4] Similarly, a "common scheme" "connotes a particular act done multiple times in a similar way."  Leonard, supra, § 9.2.2, at 572.  If the similarity between the offenses is sufficiently distinctive, this is consistent with our definition in Scott that "[t]he term 'common scheme' describes crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes."  274 Va. at 645, 651 S.E.2d at 635.

noted in <u>Spence</u> and the examples above, is that the goal furthered by the offenses must be <u>extrinsic</u> to at least one of them.  Profiting from the sale of drugs, including cultivating return customers, is <u>intrinsic</u> to the offense of selling drugs.[5]

Accordingly, we conclude that the Court of Appeals erred by ruling that the four offenses in this case were part of a common plan.  That is the sole basis upon which the court determined that they fulfilled the requirements of Rule 3A:6(b) for joinder under Rule 3A:10(c).  Because the record contains no evidence from which to infer a common plan, the requirements of Rule 3A:6(b) are not met.  We need not reach Jarvon's second assignment of error, in which he asserts that the court erred by ruling that justice did not require separate trials.

### III.  CONCLUSION

For the foregoing reasons, we will reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[5] There was, for example, nothing from which to infer that Jarvon had a separate, extrinsic goal of concealing the proceeds of his sales through money laundering, in violation of Code § 18.2-246.3, or using them to further racketeering activity proscribed by Chapter 13 of Title 18.2.

JUSTICE KELSEY, with whom JUSTICE McCLANAHAN joins, dissenting.

My colleagues have concluded that Walker's four drug charges should have been tried separately. The governing standard of appellate review, however, requires that we reverse only if the trial judge abused his discretion in coming to a different conclusion. I am unwilling to say that he did.

## I.

Under Rule 3A:10(c), a trial court may join separate criminal charges in a consolidated trial "if justice does not require separate trials" and "the offenses meet the requirements of Rule 3A:6(b)." Rule 3A:6(b) authorizes a single indictment or information to charge separate offenses "if the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan." See generally Scott v. Commonwealth, 274 Va. 636, 644-46, 651 S.E.2d 630, 634-35 (2007).

The legal principle is simple and highly flexible. Joinder is permissible if it is just and if the charges could have been joined in the initial charging instrument. Rule 3A:10(c) and Rule 3A:6(b) use discretionary concepts incapable of being reduced to precise metrics. I point this out not to criticize the Rules, but to praise them. No two drug-related cases are exactly alike, as every trial judge knows,

13

particularly those who have heard scores of such cases. Factual dissimilarities often exist, and thus, the legal standard for joinder must be supple enough to handle the broad spectrum of drug-related cases — not just the handful of cases that make their way into the appellate reports.

For this reason, we have repeatedly emphasized that whether criminal charges "should be tried separately or together is a matter resting within the sound discretion of the trial court." Fincher v. Commonwealth, 212 Va. 552, 553, 186 S.E.2d 75, 76 (1972) (per curiam) (citing Bryant v. Commonwealth, 189 Va. 310, 315, 53 S.E.2d 54, 56 (1949)).[1] "Hence, we adopt the rule of discretion for determining questions of consolidation." Id. Absent a showing that the trial court committed an abuse of discretion, we have no authority to reverse a joinder decision in a criminal case.

The exercise of discretion presupposes "that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." Thomas v. Commonwealth, 62 Va. App. 104, 111, 742 S.E.2d 403, 407 (2013) (citation and internal quotation marks omitted). In this context, the trial court

---

[1] See also Scott, 274 Va. at 644, 651 S.E.2d at 634; Commonwealth v. Minor, 267 Va. 166, 172, 591 S.E.2d 61, 65 (2004); Commonwealth v. Smith, 263 Va. 13, 16, 557 S.E.2d 223, 225 (2002); Cheng v. Commonwealth, 240 Va. 26, 33-34, 393 S.E.2d 599, 603 (1990).

"has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (alteration and internal quotation marks omitted). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Thomas, 62 Va. App. at 111-12, 742 S.E.2d at 407 (quoting Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013)) (internal quotation marks omitted).

It necessarily follows that an abuse of discretion cannot be shown merely because "[r]easonable trial judges and even some members of this Court, had they been sitting as trial judges in this case," might have reached a different conclusion than the one under review. Coe v. Commonwealth, 231 Va. 83, 88, 340 S.E.2d 820, 823 (1986).[2] "'Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting in parenthetical Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743

---

[2] See also AME Fin. Corp. v. Kiritsis, 281 Va. 384, 393, 707 S.E.2d 820, 824 (2011) ("In evaluating whether a trial court abused its discretion, 'we do not substitute our judgment for that of the trial court.'" (quoting Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997))).

15

(2005)).  If "reasonable trial judges could properly disagree,"
it matters not that "some members of this Court" would have
made a different discretionary decision.  <u>Noll v. Rahal</u>, 219
Va. 795, 801, 250 S.E.2d 741, 745 (1979).

## II.

I concede that a common plan for purposes of Rule 3A:6(b)
cannot be applied at the highest levels of abstraction.  Every
drug dealer probably plans on selling as many drugs to as many
addicts as he can.  Expanding the common plan definition to
this level of generality would render the joinder test
unreasonably broad.  But I think it no less unreasonable to
tighten the joinder standard to the point where no drug dealer
can have a common plan to sell drugs.  Burglars, sex offenders,
thieves, counterfeiters, and all manner of other criminals fall
within the parameters of Rule 3A:6(b).  I see no reason why
drug dealers should receive a special exemption from its reach.

Navigating between the overly broad and overly narrow
interpretations of common plan requires trial courts to focus
on the distinct, limiting features of each case.  A trial court
should consider, for example, whether there was a single buyer
or multiple buyers, whether the time frame of the transactions
was short or long, whether the sales territory was the same or
different for all transactions, whether one or more types of

16

drugs were sold, and whether there was a continuing or episodic relationship between the buyer and seller.

Even with these guidelines, it may well be true that the common-plan standard of Rule 3A:6(b) requires a considerable amount of judicial line-drawing to keep it from being applied too broadly or too narrowly.  As Justice Holmes once said, however, we need not be "troubled by the question where to draw the line.  That is the question in pretty much everything worth arguing in the law."  Irwin v. Gavit, 268 U.S. 161, 168 (1925).  Nor should we abandon the exercise simply because it "depends upon differences of degree.  The whole law does so as soon as it is civilized."  Daniels v. Williams, 474 U.S. 327, 334-35 (1986) (quoting LeRoy Fibre Co. v. Chicago, Milwaukee & St. Paul Ry., 232 U.S. 340, 354 (1914) (Holmes, J., concurring in part)).

### III.

In this case, the evidence at trial[3] showed that Walker, on four separate occasions over the course of thirteen days, sold

---

[3] See United States v. Cardwell, 433 F.3d 378, 385 & n.1 (4th Cir. 2005) (recognizing that an appellate court reviewing a trial court's joinder decision must look both "to the allegations in the indictment and the evidence produced at trial" and noting that this "rule has the benefit of a built-in type of harmlessness review; if the indictment does not allege a sufficient relationship for [federal joinder] purposes, but the evidence at trial reveals that such a relationship exists, it is difficult to see how the defendant could ever be prejudiced by the technical misjoinder").

cocaine to the same police informant in and around the South Hill area of Mecklenburg County. These four transactions were not isolated, random, or unplanned encounters between a drug dealer and an addict. They were instead — a reasonable jurist could conclude — evidence of a common plan by Walker to groom a specific buyer to participate in an ongoing buyer-seller relationship, in a short amount of time, in the same sales territory, with the same drug.

In making his decision, the experienced trial judge in this case no doubt considered the pretrial proffer of Walker's counsel, stating:

> Your Honor, as part of his defense, [Walker] anticipate[s] that he may want to present a defense that perhaps the substance that was transferred was not, in fact, cocaine, or that there was no drug transaction at all.

J.A. at 28. That proffer proved to be prophetic in light of the closing argument to the jury by Walker's counsel:

> We don't know for certain that what he was setting up was any kind of transaction for cocaine. Remember, it must be cocaine. It can't be marijuana, it can't be ChapStick, it can't be bubblegum or anything else. What's in his hand, what goes back and forth, if there is anything going back and forth, must be cocaine.

Id. at 412.

Walker's defense strategy underscores the reasonableness of the trial court's decision to try the charges together. Walker wanted the jury to believe that the Commonwealth could

18

not prove that what he handed to the informant was "in fact, cocaine," id. at 28, and that it could have been, for all we know, "ChapStick" or "bubblegum or anything else," id. at 412. It is true he hoped to convince the jury that the informant was lying and that no drug transaction occurred at all. But Walker also sought to imply that, if the jury believed something was sold, he had no knowledge it was cocaine and no intent to distribute it.

This subtle argument implicated the Commonwealth's burden of proving that Walker "was aware of the presence and character of the drugs," Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975), and that he possessed them with the "intent" to distribute, Code § 18.2-248(A). His ChapStick and bubblegum strategy might have had better success if the four charges were tried to four separate juries, with each jury aware of only one offense. As Walker correctly points out, the law of evidence does not permit the admission of evidence of other crimes merely to show propensity — that is, once a drug dealer, always a drug dealer.

But Walker's anti-propensity generalization breaks down when knowledge and intent are at issue, as they certainly were in this case. Evidence of other crimes is permissible if it helps prove "knowledge" and "intent." See Va. R. Evid. 2:404(b). See generally Kirkpatrick v. Commonwealth, 211 Va.

19

269, 272, 176 S.E.2d 802, 805 (1970).  In this respect,

Virginia law follows an "inclusionary approach to the uncharged

misconduct doctrine" by admitting evidence of other crimes "if

relevant, for any purpose other than to show a mere propensity

or disposition on the part of the defendant to commit the

crime."  Kent Sinclair et al., Virginia Evidentiary

Foundations § 6.4[A], at 165 (1998).[4]

For this reason, drug deals shortly before and shortly

after the one in question may be admissible to prove that the

defendant knew the white substance in his hand was an illegal

drug (not ChapStick or bubblegum) and that he intended to sell

it.[5]  As many courts have held, knowledge and intent must be

proved in every drug-related case, and evidence of other

closely related crimes can be used to prove it.[6]

---

[4] It is thus fair to say that, "[u]ltimately, the question whether to admit evidence of other crimes involves the same considerations as any other circumstantial evidence."  Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 616 (1990).

[5] When a non-propensity basis exists for admitting evidence, it does not matter if the evidence involves events preceding or subsequent to the date of the alleged crime.  See generally Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984) (accepting that, when logically and legally relevant, factual circumstances "which followed the commission of the crime on trial, as well as those which preceded it" should be admissible "even though they may show the defendant guilty of other offenses").

[6] See, e.g., Barlow v. Commonwealth, 26 Va. App. 421, 428, 494 S.E.2d 901, 904 (1998); Wilkins v. Commonwealth, 18 Va. App. 293, 299, 443 S.E.2d 440, 444 (1994); Rodriguez v. Commonwealth, 18 Va. App. 277, 280-81, 443 S.E.2d 419, 422

I acknowledge, but am unmoved by, Walker's concern that the four offenses, when known by the same jury, might prejudice his defense. In a sense, "[a]ll evidence tending to prove guilt is prejudicial," Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004), at least from the point of view of the person standing trial. "Virginia law, however, intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences. And even then, it becomes a matter of degree." Thomas, 44 Va. App. at 758, 607 S.E.2d at 746.

Like the trial court and the unanimous panel of the Court of Appeals, I find it neither unreasonable nor unjust to consider all four drug transactions — involving the same buyer, during a thirteen-day period, concerning the same drug, taking place in the same sales territory, arising out of an ongoing relationship — to determine whether Walker knew what he was

---

(1994); Satterfield v. Commonwealth, 14 Va. App. 630, 637, 420 S.E.2d 228, 232 (1992) (en banc); Rider v. Commonwealth, 8 Va. App. 595, 599, 383 S.E.2d 25, 27 (1989); Barber v. Commonwealth, 5 Va. App. 172, 180-81, 360 S.E.2d 888, 892 (1987); accord United States v. Toro, 359 F.3d 879, 884 (7th Cir. 2004); United States v. Booker, 334 F.3d 406, 411-12 (5th Cir. 2003); United States v. Maden, 114 F.3d 155, 157 (10th Cir. 1997); United States v. Jackson, 84 F.3d 1154, 1159 (9th Cir. 1996); United States v. Ramirez, 894 F.2d 565, 569 (2d Cir. 1990); United States v. Samuel, 431 F.2d 610, 612 (4th Cir. 1970); Bell v. United States, 677 A.2d 1044, 1047 (D.C. 1996); State v. Graham, 768 P.2d 259, 262 (Kan. 1989); State v. Montford, 529 S.E.2d 247, 252 (N.C. Ct. App. 2000); State v. King, 561 S.E.2d 640, 645-46 (S.C. Ct. App. 2002); Howard v. State, 713 S.W.2d 414, 416 (Tex. App. 1986).

selling and intended to sell it.  To be sure, I see little justice in allowing Walker to have the "evidence sanitized," Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 577 (1984) (internal quotation marks omitted), in an effort to improve his chances of convincing one or more of four different juries of his ChapStick and bubblegum defense.

I respectfully dissent.